In the Matter of:

City of Alexandria
v.
Purdue Pharma

Hearing

January 18, 2019



Phone: 703-837-0076
Fax: 703-837-8118
Toll Free: 877-837-0077

1010 Cameron Street
Alexandria, VA 22310
transcript@casamo.com

```
 1              UNITED STATES DISTRICT COURT

 2          FOR THE EASTERN DISTRICT OF VIRGINIA

 3                 (Alexandria Division)

 4   -----------------------------------

 5   CITY OF ALEXANDRIA,

 6          Plaintiff,

 7      v.                       Case No. 1:18cv1536

 8   PURDUE PHARMA, et al,

 9          Defendant.

10   -----------------------------------

11                               Alexandria, Virginia

12                               January 18, 2019

13

14

15

16          The above-entitled matter came on to be

17   heard before the HONORABLE CLAUDE M. HILTON, Judge

18   in and for the United States District Court for the

19   Eastern District of Virginia, located at 401

20   Courthouse Square, Alexandria, Virginia, commencing

21   at 10:24 a.m., when were present on behalf of the

22   respective parties:
```

```
 1                    A P P E A R A N C E S

 2

 3    ON BEHALF OF THE PLAINTIFF:

 4          EDWARD SPIVEY, ESQUIRE

 5          R. JOHAN CONRAD, JR., ESQUIRE

 6          Kaufman & Canoles

 7          150 West Main Street

 8          Suite 2100

 9          Norfolk, Virginia  23510

10          (757) 624-3183

11

12          ANDREW MILLER, ESQUIRE

13          GRANT MORRIS, ESQUIRE

14          Sanford, Heisler, Sharp, LLP

15          700 Pennsylvania Avenue, Southeast

16          Suite 300

17          Washington, D.C.  20003

18          (202) 499-5212

19

20

21

22    (Appearances continued on the following page.)
```

City of Alexandria v. Purdue Pharma          1/18/2019

```
 1   APPEARANCES (continued):

 2

 3

 4   ON BEHALF OF THE PLAINTIFF:

 5           KEVIN SHARP, ESQUIRE

 6           Sanford Heisler Sharp, LLP

 7           611 Commerce Street

 8           Suite 3100

 9           Nashville, Tennessee  37203

10           (615) 434-7000

11

12           ROSS BROOKS, ESQUIRE

13           Sanford, Heisler, Sharp, LLP

14           1350 Avenue of the Americas

15           31st Floor

16           New York, New York  10019

17

18

19

20

21

22   (Appearances continued on the following page.)
```

```
 1   APPEARANCES (continued):

 2

 3   ON BEHALF OF THE DEFENDANT UNITEDHEALTH GROUP AND

 4   OPTIUM:

 5           KIMBERLY KISABETH CHEMERINSKY, ESQUIRE

 6           Alston & Bird, LLP

 7           333 South Hope Street

 8           Sixteenth Floor

 9           Los Angeles, California 90071

10           (213) 576-1079

11

12           WILLIAM H. JORDAN, ESQUIRE

13           Alston & Bird, LLP

14           950 F Street, Northwest

15           Washington, D.C.  20004

16           (202) 239-3494

17

18           TURNER A. BROUGHTON, ESQUIRE

19           Williams Mullen

20           200 South 10th Street, Suite 1600

21           Richmond, Virginia 23219

22   (Appearances continued on the following page.)
```

```
 1   APPEARANCES (continued):

 2

 3

 4   ON BEHALF OF THE DEFENDANT PURDUE PHARMA:

 5          CORY WARD, ESQUIRE

 6          Dechert, LLP

 7          2929 Arch Street

 8          Philadelphia, Pennsylvania  19104

 9          (215) 994-4000

10

11          WADE W. MASSIE, ESQUIRE

12          PennStuart

13          208 East Main Street

14          P.O. Box 2288

15          Abingdon, Virginia  24212

16          (276) 628-5151

17

18

19

20

21

22   (Appearances continued on the following page.)
```

City of Alexandria v. Purdue Pharma        1/18/2019

```
 1   APPEARANCES (continued):

 2

 3   ON BEHALF OF THE DEFENDANT EXPRESS SCRIPTS, ET AL:

 4          JULIAN W. PARK, ESQUIRE

 5          Kobre & Kim, LLP

 6          150 California Street

 7          19th Floor

 8          San Francisco, California  94111

 9          (415) 582-4752

10

11          ADRIANA RIVIERE-BADELL, ESQUIRE

12          ROXANNE ROSADO, ESQUIRE

13          MATTHEW I. MENCHEL, ESQUIRE

14          Kobre & Kim, LLP

15          201 South Biscayne Boulevard

16          Suite 1900

17          Miami, Florida  33131

18          (305) 967-6117

19

20

21

22
```

```
 1               P R O C E E D I N G S

 2               - - - - - - - - - - -

 3          THE CLERK:  Civil Action 2018-1536, City of

 4   Alexandria versus UnitedHealth Group Incorporated,

 5   et al.

 6          Counsel, please note your appearance for

 7   the record.

 8          MR. SPIVEY:  Your Honor, I'm Ed Spivey from

 9   the firm of Kaufman Canoles, here on behalf of the

10   City of Alexandria.

11          THE COURT:  All right.  Good morning.

12          MR. CONRAD:  Your Honor, Johan Conrad, also

13   from Kaufman Canoles, here on behalf of the City of

14   Alexandria.

15          MR. SHARP:  Your Honor, Kevin Sharp with

16   the law firm of Sanford, Heisler, and Sharp.  I'm

17   here on behalf of the City of Alexandria.

18          MR. MILLER:  Good morning, Your Honor.

19   Andrew Miller from the law firm Sanford, Heisler,

20   and Sharp, also on behalf of the City of Alexandria.

21          MR. BROOKS:  Good morning, Your Honor.

22   Ross Brooks, from Sanford, Heisler, and Sharp, on
```

1   behalf of City of Alexandria.

2          MR. MORRIS:  Good morning, Your Honor.

3   Grant Morris on behalf of Sanford, Heisler, City of

4   Alexandria.

5          MR. BROUGHTON:  Good morning, Your Honor.

6   Turner Broughton from Williams Mullen, here on

7   behalf of the Optium defendants and UnitedHealth.

8          MS. CHEMERINSKY:  Good morning, Your Honor.

9   My name is Kim Chemerinsky at the law firm of Alston

10  & Bird, here on behalf of defendants Optium and

11  UnitedHealth Group.

12          MR. JORDAN:  Good morning, Your Honor.

13  Bill Jordan, also from Alston & Bird, for Optium and

14  UnitedHealth Group.

15          MS. ROSADO:  Good morning, Your Honor.

16  Roxanne Rosado on behalf of Express Scripts, Inc.,

17  and Express Holdings, Inc.

18          MR. MENCHEL:  Good morning, Your Honor.

19  Matthew Menchel of Kobre & Kim on behalf of the

20  Express Scripts defendants.

21          MS. RIVIERE:  Good morning, Your Honor.

22  Adriana Riviere, Kobre & Kim, on behalf of the

1   Express Scripts defendants.

2          MS. PARK:  Good morning, Your Honor.  My

3   name is Julian Park, on behalf of Express Scripts.

4          MR. MASSIE:  May it please the Court, Wade

5   Massie on behalf of Purdue Pharma, LP, Purdue

6   Pharma, Inc., and Purdue Frederick Company.  With me

7   is Mr. Cory Ward who has a motion pending pro hac

8   vice.

9          THE COURT:  All right.  That motion is

10  granted.

11         Do I have all parties now?

12         MR. MASSIE:  Yes, sir.

13         THE COURT:  All right.  Whose motion is it?

14  Who wants to go first?

15         MR. BROUGHTON:  Your Honor, there are

16  multiple -- this is Turner Broughton, Your Honor,

17  and I'm local counsel for Alston Bird.  There are

18  multiple motions pending.  There's a motion to

19  remand as well as a motion to stay, and so we would

20  be at Your Honor's pleasure in terms of what Your

21  Honor would like to hear first.

22         THE COURT:  It doesn't matter.  Whoever

```
 1   wants to go first.

 2            MR. CONRAD:  Your Honor, from the

 3   plaintiff's perspective, we think the order that

 4   they were filed, the motion to remand was filed

 5   first and the motion to stay was filed next; so I

 6   think that's the natural order.

 7            THE COURT:  All right.

 8            MR. CONRAD:  If that's okay with you.

 9            THE COURT:  That's fine with me.

10            MR. CONRAD:  Your Honor, may it please the

11   Court, I'm Johan Conrad.  As I just said, I'm from

12   Kaufman & Canoles.  I'm here on behalf of the City

13   of Alexandria and I'm going to address the motion to

14   remand.

15            Your Honor, there are three basic

16   categories of jurisdiction that are at issue in the

17   motion to remand, basically the categories of

18   jurisdiction that the defendants are relying on.

19   And so I'm going to address those essentially in

20   order in which they were addressed in the briefing

21   and try to go through them relatively succinctly.

22            As you know, Your Honor, this case was
```

1    first filed in the city -- excuse me, in Alexandria

2    Circuit Court on behalf of the City of Alexandria

3    against a number of defendants who are part of the

4    pharmaceutical opioid chain of distribution;

5    everything from the manufacturers of the opioids, to

6    the distributors of the opioids, to pharmaceutical

7    benefit managers who help work in the chain of

8    distribution to deliver those opioids to end users.

9         The counts in the claims in the complaint

10   filed by the City of Alexandria are all brought

11   under Virginia state law.  They range from statutory

12   public nuisance claims, which are only available to

13   localities and government entities in the

14   Commonwealth of Virginia, to common-law negligence

15   claims to conspiracy claims.  Every single claim --

16   Virginia Consumer Protection Act claim, they all

17   arise under Virginia law.

18        There are no federal claims in the

19   complaint.  The complaint is lengthy, it contains

20   several hundred allegations.  It contains

21   allegations against a number of defendants, at least

22   one of which is a Virginia resident defendant.

1    There's no dispute that there is not diversity as to

2    that defendant.  And I'll talk about some issues

3    with that defendant -- with the defendants here in a

4    few minutes.

5          Your Honor, the -- the three bases on which

6    the removal has occurred, first is under something

7    called Class Action Fairness Act, CAFA.  The second

8    is federal question jurisdiction under a -- what's

9    been deemed a special and small category of federal

10   question jurisdiction recognized in Supreme Court

11   cases like Gunn v. Minton and also addressed in the

12   Fourth Circuit in a case Flying Pigs.

13         The last category has to do with diversity

14   jurisdiction, and that involves a couple of prongs.

15   There's a piece of that in which there's an argument

16   for fraudulent joinder and then there's another

17   piece of that that argues for Rule 21 severance.  So

18   with Your Honor's indulgence, I'm going to start

19   with the Class Action Fairness Act piece of this

20   case.

21         Before I do, I want to make clear that

22   there were some proceedings going on in the Virginia

1   state courts when this case was removed.  As you may

2   know from some of the briefing, the plaintiffs had

3   petitioned the Supreme Court of Virginia under the

4   Multiple Claimant Litigation Act to consolidate

5   similar actions in one particular Circuit Court.

6          The Supreme Court of Virginia had already

7   issued an order appointing a three-judge panel of

8   three Circuit Court judges to hold a hearing and any

9   necessary briefing on the issue of consolidation,

10  and they were working to set a hearing.  In fact,

11  there was an actual hearing date being -- being

12  circulated for -- for a possible hearing in January

13  at the time that these cases were removed or the

14  time this case was removed.

15         So, Your Honor, with respect to the Class

16  Action Fairness Act, there are actually two Fourth

17  Circuit opinions that provide clear guidance on this

18  issue within the Fourth Circuit.  There is also a

19  Second Circuit opinion that provides somewhat less

20  clear guidance because it's not as relevant here in

21  the Fourth Circuit.  And then there's actually a

22  district court opinion that has come directly out of

 1   the opioid litigation context that addresses the

 2   Class Action Fairness Act jurisdiction argument.

 3   All of those decisions have rejected the application

 4   of CAFA in a context like this one.

 5          And I think that the most appropriate

 6   decision or the most on-point decision for purposes

 7   of this Court is the Fourth Circuit's decision in a

 8   case called West Virginia v. CVS Pharmacy.

 9          Now, remember, Judge, there are -- there

10   are two bases under the Class Action Fairness Act by

11   which Congress has deemed there could be -- there

12   could be federal question -- or excuse me, federal

13   jurisdiction.  The first is under a class action,

14   second is under what they call a mass action.  And

15   mass action involves we have multiple individual

16   cases, under 100 individual cases that are

17   consolidated.  And so under that mass action, you

18   could have CAFA jurisdiction.

19          The only category that the defendants have

20   raised here is the class action category.  They have

21   not -- they specifically decline to rely on the mass

22   action part.  Okay.

1          So West Virginia v. CVS pharmacy is a

2    Fourth Circuit case that specifically deals with

3    class action jurisdiction in the context of a

4    lawsuit brought by a government entity, in that case

5    the Attorney General for the state of West Virginia.

6          The feature of class action jurisdiction or

7    CAFA that matters most for purposes of us here today

8    is that to have jurisdiction or CAFA, you either

9    have to file under Rule 23 of the Federal Rules of

10   Civil Procedure or you have to file under what is in

11   the statute called a similar statute -- state

12   statute or rule of judicial procedure authorizing an

13   action to be brought by one or more represented

14   persons as a class action.

15          So the threshold question here is whether

16   or not the complaint before you filed by the City of

17   Alexandria was brought under a similar state statute

18   or rule of judicial procedure similar to Rule 23.

19          And so in this West Virginia case, what the

20   Fourth Circuit said was, okay, what does it mean for

21   a state statute or rule of judicial procedure to be

22   similar to Federal Rule 23.  And in that case the

 1   Fourth Circuit said while a similar state statute or

 2   rule does not need to contain all of the conditions

 3   and administrative aspects of Rule 23, it must at a

 4   minimum provide a procedure by which a member of a

 5   class whose claim is typical of all members of the

 6   class can bring the action not only on his own

 7   behalf but also on behalf of all others in the class

 8   such that it wouldn't be unfair to bind everyone to

 9   the judgment that's entered.

10        And then the Fourth Circuit went on to

11   explain what that meant even more and to distinguish

12   the case in front of it in ways that I think are

13   directly applicable to this particular case.  And

14   one of the things that the Fourth Circuit said was

15   the reason that the case brought by the state of

16   West Virginia could not be deemed a class action is

17   that for a representative suit to be a class action,

18   the representative party had to be a part of the

19   class and possess the same interest and suffer the

20   same injury as the class members.

21        And the Court said here -- and remember --

22   I should probably back up and set the stage a little

 1    bit.  The reasons the defendants argue that this

 2    somehow looks like a class action is that they are

 3    claiming that the damages are -- and the -- and the

 4    claim is actually being brought on behalf of the

 5    residents of the city of Alexandria as opposed to on

 6    behalf of the city itself.  And so somehow the

 7    citizens of the city of Alexandria should be deemed,

 8    quote-unquote, real parties in interest.  Okay.

 9            And so what the Fourth Circuit said is a

10    case like this can't be a class action because in

11    order to be -- in order to be similar to a class

12    action, the representative party has to be a part of

13    the class.  In other words, it would have to

14    be another resident of the city.  And in the West

15    Virginia case, the Fourth Circuit said the attorney

16    general's claim on behalf of the state of West

17    Virginia does not require the state to be a member

18    of the class, it does not require the state to

19    suffer the same injury as the class member or to

20    have a claim typical of each class member's claim.

21            So here the City of Alexandria is not a

22    member of the, quote-unquote, class that the

1    defendants would claim exists here.  And the City of

2    Alexandria is not bringing this claim in a

3    representative capacity on behalf of the other or

4    the residents of the city.

5              Now, what the defendants have done is they

6    have tried to cherry pick certain allegations in the

7    complaint that reference generally injury to

8    particular residents and citizens.  In other words,

9    there are some paragraphs in the complaint -- the

10   complaint is several hundred paragraphs long, but

11   there are a couple that talk about the fact that

12   some of the -- some of the residents have been

13   injured or been subject to bad acts by the

14   defendants.

15             What -- but the case is not brought

16   underneath any state statute or rule of judicial

17   procedure that looks like Rule 23.  And, in fact,

18   the Commonwealth of Virginia does not even have a

19   state statute rule of judicial procedure that would

20   allow a representative class action.  In fact, we

21   cited to the Supreme Court of Virginia case or

22   recent Supreme Court of Virginia case in our briefs

1   that specifically says Virginia does not recognize

2   these kinds of representative actions.  So you can't

3   even bring in Virginia the kind of case that would

4   be similar to Rule 23 for purposes of CAFA

5   jurisdiction.

6           So there are a multitude of reasons why

7   this claim is not a class action under CAFA.  It's

8   been rejected.  The only time it's been addressed in

9   the Fourth Circuit with respect to government entity

10  plaintiffs, it's been rejected by a District Court

11  in the opioid context.  It's been rejected by the

12  Second Circuit in another case that involved opioids

13  in the Commonwealth of Kentucky.  So there's frankly

14  no basis for this Court to conclude that there is

15  any federal jurisdiction under the Class Action

16  Fairness Act.

17          So, Your Honor, unless you have any

18  questions about CAFA, I'm going to move on to the

19  next issue that was raised as a basis for federal

20  jurisdiction and that would be federal question

21  jurisdiction.

22          So federal question jurisdiction is -- the

 1   only basis for the federal question jurisdiction

 2   argument here is what's the been called a special

 3   and small category of federal question jurisdiction.

 4   And the Fourth Circuit has specifically provided

 5   guidance with respect to this issue as well.

 6          In a case called Flying Pigs, a very

 7   colorfully named case, Flying Pigs, LLC v. RRAJ

 8   Franchising, LLC, Fourth Circuit recognized that in

 9   order to fit in this tiny, little area -- and what

10   it is is if you have state law claims but every

11   single piece of the state law claim would require

12   some resolution of a federal issue, and it would be

13   a significant, substantial federal issue for

14   purposes of the federal systems as a whole, it

15   wouldn't interfere with the federal state balance,

16   it would be actually in dispute.  There's a -- there

17   are four specific elements to this test.  And it's a

18   conjunctive test; in other words, every single

19   element has to be met.

20          Here's what the Fourth Circuit said about

21   what needs to happen in order to qualify for this

22   very narrow window of federal question jurisdiction.

1    This is quoting the Fourth Circuit, As we've

2    recognized the plaintiff's right to relief for a

3    given claim necessarily depends on a question of

4    federal law only when -- and this word is actually

5    emphasized in the opinion, it's underlined -- only

6    when every -- every legal theory supporting the

7    claim requires the resolution of a federal issue.

8            Now, the defendants have claimed that some

9    of the claims here involve resolution of a federal

10   issue, but the bottom line is that unless every

11   legal theory supporting the claim requires the

12   resolution of a federal issue, it doesn't qualify

13   for this jurisdiction.  I mean, excuse me, yeah, for

14   this federal question jurisdiction loophole.

15           So we've got a public nuisance claim under

16   the -- under the -- under the state statute that

17   provides for public nuisance claims, we've got a

18   common law nuisance claim, we've got a common law

19   trespass claim, we've got conspiracy claims, all of

20   which can be and, in many cases, will be resolved

21   without reliance on any federal issue.

22           Now, the defendants have said, well, the --

1   the complaint cites to the Controlled Substances Act

2   and whether or not the defendants complied with

3   Controlled Substances Act, that's true.  And there

4   may be an element of this case that involves

5   determining whether or not, for purposes of some of

6   these claims, the defendants violated or did not

7   violate the Controlled Substances Act.

8         But as I just said from the Fourth Circuit,

9   in order to qualify for this narrow window of

10  federal jurisdiction, every legal theory -- every --

11  the Fourth Circuit emphasized the word "every," --

12  every legal theory supporting the claim requires the

13  resolution of a federal issue.  And it's beyond

14  doubt that not every legal theory here would require

15  a resolution of a federal issue.

16        In fact, as you know, Your Honor, in filing

17  cases in Virginia, you talk about the acts of the

18  defendant, say they acted negligently, you go to

19  trial, you put on the evidence of negligence.  That

20  evidence of negligence may, under other

21  circumstances, violate something else, but you don't

22  have to mention that.  You can present to the jury

1   the evidence that you have, the bad acts of the

2   defendants, and under Virginia common law you can

3   recover if the jury finds you to be negligent.

4        Count I is a statutory public nuisance

5   claim that only exists in -- under Virginia

6   statutory public nuisance law.  The Count II, the

7   common law nuisance, negligence.  All of these

8   things are intertwined with and require, for the

9   most part, resolution of only state law issues.

10        And remember it has to be every single

11  piece of our claim has to be founded upon a federal

12  issue -- requiring the resolution of federal issue

13  in order to meet this loophole.  And that is simply

14  not the case.  So there's no basis for federal

15  question jurisdiction here.

16        And let me point out real quick, Your

17  Honor, in the defendant's briefing, at one point

18  they -- they had said that, Well, if -- they

19  misstated this particular -- this particular legal

20  theory.  And they said, Well, we've got some claims

21  that involve the resolution of a federal issue and,

22  therefore, that will be enough.  Well, that's --

1   that's just not the case.  The Fourth Circuit has

2   said it has to be every legal theory supporting the

3   claim.  There are lots of state law theories

4   supporting the claims.

5          So, Your Honor, I'm going to move on to

6   diversity jurisdiction.  The diversity jurisdiction

7   arguments here actually involve two different

8   theories.  One is fraudulent joinder and the other

9   is Rule 21 severance.  And if I will, Your Honor,

10  I'd like to sort of set the stage for you for this

11  argument.

12         So there's a nondiverse defendant in this

13  case.  When the case was -- and this is a tangential

14  undisputed fact.  When the case was removed, there

15  was actually a motion to amend and an amended

16  complaint sitting in the Alexandria Circuit Court

17  that the Court had not actually entered the order

18  yet on the amended complaint.  The defendants

19  swooped in and removed it before the Court got the

20  order entered.

21         The amended complaint would have added

22  additional nondiverse defendants who also happened

```
 1   to be distributor defendants; but as we sit here

 2   today, we're working off the original complaint

 3   because that's the complaint that was in effect at

 4   the time of the removal because the order hadn't

 5   been entered yet.

 6          So we did have a nondiverse defendant in

 7   the original complaint.  It's an entity called

 8   McKesson Medical.  There's actually two distributor

 9   defendants with the name McKesson in -- in the

10   complaint.  McKesson Medical, no one disputes

11   McKesson Medical is a Virginia citizen for diversity

12   jurisdiction purposes and their presence would

13   destroy diversity jurisdiction.

14          The defendants, therefore, argue with

15   respect to fraudulent joinder.  They claim that

16   there are not sufficient factual allegations in the

17   complaint to support relief against McKesson Medical

18   and, therefore, they have been fraudulently joined.

19   In a second, I'm going to show Your Honor exactly

20   why that -- that argument has no legs.

21          The second thing they do is that when a

22   fraudulent joinder argument is narrowly focused in
```

1    on McKesson Medical as a nondiverse defendant, for

2    Rule 21 severance, they broaden the scope to all

3    distributor defendants who are identified in the

4    complaint and they say that Your Honor should sever

5    the distributor defendants from the manufacturer

6    defendants all together.  And once you sever all the

7    distributor defendants, you will then in that bucket

8    take with you the nondiverse defendant and,

9    therefore, it will preserve federal jurisdiction as

10   to the manufacturer defendants.

11        I think it's important to note out of the

12   box that there are multiple federal district courts

13   within the Fourth Circuit that have rejected both of

14   these arguments unequivocally.  And, Your Honor, I'd

15   like to start with respect to the fraudulent joinder

16   argument, and actually the Rule 21 argument.

17        Judge Hendricks down in South Carolina

18   issued a couple of decisions, some of the other

19   South Carolina judges did too, and she had some

20   things to say about this.  And she talked about the

21   fact that, as described in the filings in this

22   case -- and that case was another opioid case,

1    involved very similar allegations, involved many of

2    the same defendants.  The prescription drug supply

3    system in the United States involves manufacturers,

4    or defendants here, distributors, or defendants

5    here, and other entities all of whom are involved at

6    one stage or another in one capacity or another in

7    delivering prescription drugs to patients.  This

8    delivery of prescription drugs takes place within a

9    complex system that controls the price and flow of

10   drugs in America.  It's supposed to be a closed

11   system.

12           In accordance with that, the laws and regs

13   that have been cited should be in place all along

14   the distribution chain to prevent prescription drugs

15   from being diverted anywhere other than the

16   legitimate channels.

17           All of these defendants are in that supply

18   chain.  Based on the foregoing, the Court, Judge

19   Hendricks, finds the removing defendants have failed

20   to make a showing that these defendants were

21   fraudulently joined.

22           So, Your Honor, this argument, this

1  fraudulently joinder argument has already been

2  rejected in an opioid context and for good reason.

3         Your Honor, do you happen to have a copy of

4  the complaint up there with you?  Because, if not, I

5  have a copy that I can hand up to you that I'd like

6  to --

7         THE COURT:  You can just tell me what you

8  want to tell me.

9         MR. CONRAD:  Okay.  Well, Your Honor, what

10  I'd like to do very quickly is I just want to go

11  through -- there -- there have been multiple

12  statements in briefing and things that have said

13  that McKesson Medical, which is the Virginia

14  nondiverse defendant, that the complaint is devoid

15  of specific factual allegations against McKesson

16  Medical.  And that's absolutely not the case.

17         And what I want to do is -- very quickly, I

18  want to run through the specific allegations of the

19  complaint.  And we've cited these in our brief, but

20  I think it's important to show the Court exactly how

21  detailed some of the descriptions are in the

22  complaint about McKesson Medical.

```
 1              So, first of all, the defendants have --

 2     have tried to analogize this case -- this fraudulent

 3     joinder part of the case to other cases outside the

 4     opioid context where courts have said, Well, there

 5     are really no specific allegations against this

 6     particular defendant so clearly they were just

 7     tacked on to destroy diversity and so, therefore,

 8     they're fraudulently joined and we can ignore their

 9     presence.

10              Now, Virginia courts, including this

11     district, have said, look, the only way that you can

12     show fraudulent joinder is if you can show that

13     there was no possibility of recovery against the

14     allegedly fraudulently joined defendant.  No

15     possibility of recovery.

16              In fact, one court said in Virginia state

17     courts usually you just have to say negligence in

18     your claim, your pleading -- the notice pleading

19     standards.  So as long as you've got some facially

20     valid allegation of negligence, which is a really,

21     really low bar in the Virginia pleading standard,

22     then the defendant is not fraudulently joined.
```

```
1          I suggest to you here that we have far and
2    away exceeded what was already a very low bar.  So
3    if you imagine a high jump being set and we only had
4    to get a foot over, we jumped ten feet over.  And
5    that's what I want to do, is go through and show you
6    that not only have we alleged a possibility of
7    recovery, we've alleged a very clear likelihood of
8    recovery.
9          First of all, unlike the cases that the
10   defendants have cited, the allegations against
11   McKesson Medical are not simply vague allegations
12   against all defendants.  So the cases the defendants
13   want to rely on talk --
14        THE COURT:  Tell me what allegations you've
15   made against them.
16        MR. CONRAD:  Your Honor, there is a
17   subcategory of defendants called the distributor
18   defendants, they are alleged as such.  Distributor
19   defendants are a particular category within the
20   complaint.  So right above paragraph 92 in the
21   complaint, there is a subhead C in bold, all caps,
22   says distributor defendants.  And then underneath
```

1   that through the following paragraphs 92 and

2   following, it identifies specific different

3   distributor defendants.  So if you go underneath the

4   distributor defendants subhead to paragraphs 99

5   through 101, there's specific allegations about

6   McKesson Medical being a Virginia corporation and

7   being a wholesale distributor of pharmaceuticals,

8   including opioids.

9            You then flip through a few more paragraphs

10  after the other distributor defendants have been --

11  have been identified.  Paragraph 111 of the

12  complaint then says, The distributor defendants

13  listed above -- which includes McKesson Medical,

14  there's four or five of them -- The distributor

15  defendants listed above are collectively referred to

16  herein as, and then it's quoted, distributor

17  defendants.

18           And then paragraph 112 says, The

19  distributor defendants, which includes McKesson

20  Medical, purchased opioids for manufacturers and

21  sold them to pharmacies throughout Virginia.  The

22  distributor defendants, including McKesson Medical,

```
 1   played an integral role in opioids being distributed

 2   across Virginia, including Alexandria.

 3            Paragraph 113, the failure of all

 4   distributor defendants, including McKesson Medical,

 5   to effectively monitor and report suspicious orders

 6   of opioids and implement measures to prevent the

 7   filling of invalid medically unnecessary

 8   prescriptions greatly contributed to the increase in

 9   opioid overuse and addiction.  Distributor

10   defendants, including McKesson Medical, directly

11   caused a public health and law enforcement crisis

12   across the country, including in Alexandria.  Those

13   are directly -- that's a direct quote from the

14   complaint.

15            You flip back further, paragraph 259 of the

16   complaint is -- there's a subhead right above

17   paragraph 259.  It says, Manufacturer and

18   distributor defendants, which includes McKesson

19   Medical, violated the requirements to prevent

20   diversion and report suspicious orders under both

21   Virginia and federal law.

22            Paragraphs 259 -- and I won't read you
```

City of Alexandria v. Purdue Pharma            1/18/2019

 1   every one, but paragraphs 259 through 266 then lay

 2   out specific allegations against both the

 3   manufacturer and distributor defendants for

 4   liability.  All those allegations included McKesson

 5   Medical to the extent they're ident- -- they're

 6   directed as distributor defendants.

 7           Go to then paragraph 282, there is a

 8   subhead again, distributor defendants.  And

 9   remember, every time the complaint says distributor

10   defendants, McKesson Medical is specifically --

11           THE COURT:  I understand.

12           MR. CONRAD:  -- included.

13           THE COURT:  I understand that.

14           MR. CONRAD:  Paragraphs 282 all the way

15   through paragraphs 306 include specific allegations

16   that have -- that the distributor defendants have

17   done.  It's a whole subpart of the complaint.

18           So paragraph 228 talks about the legal

19   duties that were legally required of the distributor

20   defendants.  Paragraph 283 talks about what they

21   were required to do to create a system to identify

22   and report suspicious orders of controlled

 1   substances.

 2        The only part of this entire section from

 3   282 through 306 that does not include McKesson

 4   Medical is one paragraph which in the Alexandria

 5   complaint is paragraph 293.

 6        Paragraph 293 has several subparts that

 7   specifically talk about federal government

 8   regulatory and other activity target specifically at

 9   some of the distributor defendants.  And so this one

10   paragraph, paragraph 293, says, oh, by the way, some

11   of these distributor defendants have actually been

12   the target of -- of -- one was a settlement with

13   the -- with the DEA, another was a memorandum

14   agreement between one of the entity -- one of the

15   distributors and the DEA, another was a DEA issuing

16   a show -- a show cause.  And these -- in that

17   paragraph McKesson Medical, at least as far as we

18   know right now, was not the subject of a DEA

19   enforcement or anything like that.

20        What the defendants tried to do is say,

21   well, because some of those specific distributor

22   defendants were the subject of that and you

1   specifically called them out, that somehow that that

2   should result in ignoring all of the other

3   complaint's allegations about what McKesson Medical

4   did.  And that is frankly a -- not only an

5   inaccurate reading in the complaint, it's a -- it's

6   a -- there's no basis for that reading of the

7   complaint.  It's absolutely abundantly clear from

8   the allegations that McKesson Medical is

9   specifically included in these dozens of allegations

10  about what the distributor defendants did wrong.

11          THE COURT:  All right.  I understand your

12  position.

13          MR. CONRAD:  The next issue then, Your

14  Honor, beyond -- and just to wrap up on that, Your

15  Honor, there's more than a possibility of recovery

16  against McKesson Medical.  Again, we -- we had to

17  clear about a one-foot bar, we cleared a ten-foot

18  bar on that.  And the Court should reject that as a

19  basis of federal jurisdiction.

20          The last argument for federal diversity

21  jurisdiction has to do with Rule 21, and that has to

22  do with the -- the idea that the Court should

1    somehow sever off the distributor defendants from

2    this case.  As I said before, this is a slightly

3    more widely focused argument.  It includes all the

4    distributor defendants, not just McKesson.  I'd say,

5    Your Honor, that first there's a -- there's a legal

6    issue here, which is that Rule 21, there are

7    multiple District Courts that have called into

8    question the use of Rule 21 to create -- in effect,

9    create diversity.

10          So, in other words, your -- your role --

11   the Court's role is to determine as a -- as an

12   initial matter whether or not there is federal

13   subject-matter jurisdiction.  And if it doesn't have

14   federal subject-matter jurisdiction, the proper

15   course is to remand the case.

16          And so there's a -- there's a serious

17   question as to whether or not a Court that does not

18   have subject-matter jurisdiction in the first

19   instance can somehow manufacture that by severing

20   certain defendants under Rule 21, particularly in

21   the context of removal or specifically in the

22   context of removal.

1        We don't think -- we believe that it would

2    be improper to exercise any sort of discretion on

3    Rule 21 when there's clearly no subject-matter

4    jurisdiction here.  However, to the extent that you

5    reach the Rule 21 severance argument, there are

6    multiple other District Courts in the opioid context

7    that have all rejected this particular argument

8    under these circumstances.

9        And again, Your Honor, the observations

10   from -- and there are several cases that deal with

11   this, but I'm going to specifically talk about Judge

12   Hendricks and one of her decisions out of South

13   Carolina.  And what Judge Hendricks said was -- she

14   said, The facts alleged in the complaint are

15   sufficiently intertwined with respect to all of the

16   defendants.  The claims are not so separate and

17   distinct that keeping them joined would result in an

18   injustice.  On the contrary, keeping the parties and

19   claims joined would promote efficiency, minimize

20   delay, inconvenience, and expense to the parties.

21       Indeed, if the Court were to order

22   severance to obtain federal jurisdiction, the county

1    here stands to suffer significant prejudice as the

2    defendants in each case would have the ability to

3    shift blame and responsibility to an absent party.

4    So the manufacturer defendants would be able to

5    shift blame to the absent distributors, in the words

6    of Judge Hendricks, thereby forcing the county to

7    defend the actions of the absent defendants in order

8    to substantiate its claims against the defendants

9    present in each case.

10            Then Judge Russell in a -- in a case

11   involving -- involving the same issue out of the

12   city of Baltimore -- this was a -- this was a

13   Maryland decision.  He said because the city's

14   claims against these defendants are factually and

15   legally intertwined with its claims against the

16   other defendants, the Court concludes that they're

17   necessary and dispensable -- indispensable under

18   Rule 19 and thus are not severable under Rule 21;

19   thus the Court will not sever these defendants to

20   create complete diversity among the parties.

21            Those are the kinds of things the judges in

22   district courts and the Fourth Circuit have

 1   concluded when presented with this same argument.

 2   Again, as I started, as Judge Hendricks points out

 3   and as is clear from reading the complaint, these

 4   are factually and legally intertwined issues.

 5   You've got the manufacturer distrib- -- excuse me,

 6   defendants who are making the drugs, you've got

 7   distributor defendants who are distributing the

 8   drugs; those issues and claims are intertwined and

 9   you can't just simply carve one off the other.

10          And, in fact, as far as we can tell,

11   there's no case in the opioid context that has

12   determined that it's a good idea, under these kind

13   of circumstances with manufacturer and distributor

14   defendants, to grant severance.

15          THE COURT:  All right.  I understand your

16   theory.

17          MR. CONRAD:  Your Honor, the bottom line is

18   that you can look throughout the -- it's -- the

19   jurisdictional arguments have been made here and,

20   frankly, the defendants don't have any specifically

21   on-point authority.  All of -- all of the

22   authorities that is on point with these issues, all

1   is in favor of the plaintiffs, all of it's in favor

2   of remand.  And what the defendants have done is

3   they take cases in other contexts that are not

4   material and on point and cobble together different

5   sorts of legal theories.  They've taken snapshots

6   out of a long complaint and tried to put together

7   for you an argument that somehow, by taking all

8   these disparate things, we can sort of create

9   federal jurisdiction out of whole cloth.

10          The bottom line is that the Fourth Circuit

11  has addressed several of these issues specifically,

12  district courts in the opioid context have addressed

13  many of these issues specifically.  And every single

14  one of those materially on-point decisions point in

15  the direction of remand.

16          THE COURT:  All right.

17          MR. JORDAN:  Good morning, Your Honor.

18  Bill Jordan again on behalf of the removing

19  defendants.  I represent Optium and UnitedHealth

20  Group, Express Scripts, and other pharmacy benefit

21  managers also joined as -- as removing -- removing

22  defendants here.  I'll address counsel's arguments

1    in turn starting with CAFA and then going into

2    federal question.

3            Your Honor, unlike many cases where a

4    matter has been removed, under CAFA the general

5    notion related to the presumption against removal

6    doesn't apply.  The Supreme Court told us that and

7    the Dark Cherokee case said that, No anti-removal

8    presumption attends the cases invoking CAFA, which

9    Congress enacted to facilitate removal.  Especially

10   where there are matters -- there are 1,500 matters

11   like this pending before Judge Polster in the MDL.

12   This is clearly a matter of national importance, the

13   opioid crisis is certainly a matter of national

14   importance and one that CAFA was enacted to ensure a

15   standard national framework for resolution.

16           To be sure, Your Honor, Virginia does not

17   have a Rule 23 class action procedure as a matter of

18   its rules of civil procedure, but what plaintiffs

19   have filed is a class action in name only.  I'm

20   going to walk through why that is as to matter of

21   law and also why it is as a matter of equity.

22           Plaintiffs' counsel stated that they did

1    not bring this matter in a capacity as a

2    representative of its residents.  They, however,

3    have relied upon the case West Virginia versus CVS

4    which granted remand, did not allow federal --

5    federal removal to occur, where the state was

6    bringing the case.  In that case the state, as a

7    sovereign, was bringing a case in its parens patriae

8    authority.

9          A city or a county -- a city does not have

10   parens patriae authority.  It is merely a political

11   subdivision of the state, it is a citizen of the

12   state.  It can only sue in its own individual

13   capacity.  And so when one then looks carefully at

14   the language that they put in their complaint, they

15   are absolutely the masters of their complaint, which

16   requires us to look at what they are asking the

17   remedy that the Court order.

18          The remedy that they are asking is a remedy

19   for both themselves as a citizen of the state, as an

20   injured party with the same injury, the same cost --

21   the same things being borne by its residents.  They

22   are suing in the name of a -- of a party that has

1    been injured on behalf of itself and its residents.

2    And how do we know that.  Well, let's look at what

3    they -- what they said and then compare it to the

4    language of their complaint.

5            They state, Plaintiffs seek relief and

6    damages for the harm caused to them, a municipality.

7    They say that the damages sought by the plaintiff --

8    this is in paragraph 6 of the rebuttal brief -- are

9    not damages common to any class members.  Instead,

10   we seek damages, past, present, and future

11   expenditures of public funds.

12           In their rebuttal brief they say, There is

13   no claim in the complaint whereby the city is

14   bringing a claim on behalf of its citizens, such

15   that its citizens will be bound by any judgment.

16   This is demonstrably not true when one looks at the

17   language.

18           We cite to numerous paragraphs within the

19   complaint where if they prevail, if they were in

20   state court under Rule 1.1 relating to judgments in

21   Virginia, the residents of the state of Virginia --

22   or the residents of the city of Alexandria will, in

 1    fact, be bound by their judgment.  Why is that?  We

 2    have cited through numerous paragraphs, and I'll

 3    just cite a few of those -- of those for you, Your

 4    Honor.

 5           Numerous paragraphs in the complaint,

 6    Count 3 where they're seeking reimbursement of

 7    monies paid by the manufacturers which would

 8    necessarily bind the residents if judgment were

 9    entered, where they want to know -- want to know

10    what the citizens and what the -- what the plaintiff

11    actually paid for the manufacturers' products.  If

12    they prevailed and recovered to the $100 million

13    they want, the residents would be bound by that

14    judgment.  They could not bring a claim for

15    reimbursement of those funds.

16           Similarly, they state in Count 4 that the

17    defendants made misrepresentations and omissions of

18    material facts to plaintiffs and its residents to

19    induce them to purchase, administer, and consume

20    opioids; were they successful on that count, the

21    residents would be bound.  Plaintiff then -- this

22    is -- that was at paragraph 371.

1          They state, paragraph 377, Plaintiffs and

2     its residents reasonably relied upon the

3     representations made by defendants, which caused

4     plaintiff, through its programs, departments, and

5     agencies, to incur -- to incur costs.  The material

6     misrepresentations and reliance by the -- by the

7     residents.

8          Most notably, however, in their final count

9     for unjust enrichment, their equity count which I

10    really want to touch on here.  They state that at

11    the time -- this is paragraph 431, in exchange for

12    opioid purchases and at the time plaintiff and its

13    residents made these payments to the manufacturers

14    or distributors, plaintiffs and its residents

15    expected the defendants had not misrepresented any

16    material facts.  And they then seek disgorgement of

17    profits on behalf of the plaintiff, the City of

18    Alexandria and its residents.  Were the Court to

19    issue a ruling, it would bind those residents who

20    would then be precluded from recovering those types

21    of damages.

22          And so on the -- the point where we -- so

1    we then look through and say they have named -- they
2    have created, as a matter of law, a class action in
3    name only.  We then look through and see, are the
4    typical standards that are required for the
5    maintenance of a class action apparent on the face
6    of the complaint.  Commonality, typicality,
7    numerosity, adequacy, and they absolutely are.  And
8    we go through each of those requirements within our
9    notice of removal.
10           And so as a matter of law, given the
11   language of CAFA, they have set forth a class action
12   of national importance that CAFA was designed to
13   seek to be brought in federal court, but it's not
14   just as matter of law, there actually is a provision
15   as a matter of equity in Virginia that allows
16   representative actions to be brought.  They bring
17   claims at equity as well as at law.
18           This line of cases goes back all the way
19   into the -- into the 19th century, started with a
20   case called Bull versus Read in 1855, it's 54 Va.
21   78, where the Virginia Supreme Court says that the
22   act in question is, when necessarily affecting all

1    inhabitants of the district named in respect to

2    persons or property who were liable to taxation and

3    as they were many in number that had a common

4    interest, it, this representative lawsuit, was

5    allowable, according to settled practice, for some

6    to file a bill on behalf of themselves and other

7    inhabitants similarly situated, seeking any relief

8    of which they might all have in common.

9         And it really goes back to common law.

10   There's a matter called a representation in equity

11   at common law incorporated in Virginia and relied

12   upon by the Virginia Supreme Court in a strain of

13   cases.  It started with Bull, there's a case called

14   Blanton in which a -- citizens were allowed to bring

15   a representative action against a manufacturer, a

16   fertilizer company.  That is at 77 Va. 335.

17        There is an act -- matter called Bosher

18   versus Richmond at 89 Va. 455.  And in each of those

19   cases, as a matter of equity, which still exists

20   under Virginia law, a class action or a

21   representative action may be maintained.  And here,

22   that's exactly what they are seeking to do.  They

1    are not a state sovereign.  They may not bring a

2    parens patriae action.  They are seeking recovery

3    for the same injuries that they have on behalf -- on

4    behalf of their residents as a part of that class;

5    and, therefore, removal under CAFA is appropriate.

6            I'd like to talk as well about the federal

7    question argument.  The federal question is just as

8    appropriate for removal.  My colleague on the

9    plaintiff's side is correct that a claim under the

10   Grable standard that the Supreme Court has

11   articulated does require that the federal question,

12   the federal issue be necessary for the resolution of

13   that particular claim.

14           The claim that we look at, Your Honor, is

15   count Number -- it changed.  Let's see.  Count

16   Number VI.  In Count Number VI, the plaintiffs cite

17   to both the Virginia Drug Control Act, but also cite

18   to federal law, the Federal Controlled Substances

19   Act.  And that is the basis for our federal question

20   removal.

21           The federal Controlled Substances Act,

22   national uniform law governing the distribution

1   manufacturer sale of controlled substances,

2   including the substances at issue here.  The

3   Virginia law on which they're relying incorporates

4   expressly the violation of the Virginia law.  It

5   says that if you violate the Controlled Substances

6   Act, you violated the Virginia law.  It sets forth

7   standards that are the standards that it must comply

8   with the Controlled Substances Act.  There's not

9   separate Virginia law that is different from the

10  Controlled Substances Act.  One has -- if one

11  violates the Controlled Substances Act, it has

12  violated the Virginia law.

13          And, therefore, all it has done is -- where

14  they say it's Virginia law and federal law, all that

15  claim is is for a violation of the Controlled

16  Substances Act that is necessary, it is required, it

17  is fundamental to that particular claim, it is

18  entirely appropriate for Grable removal, which

19  admittedly is one that the Supreme Court has said is

20  a narrow grounds for removal.  You have to find that

21  the federal question is, in fact, appropriate for

22  the elements of that particular claim; and we submit

1    it is.

2          You -- in order for them -- in order for

3    the plaintiffs to be successful on that claim of

4    negligence, per se, in count VI, it definitively

5    requires a resolution of the Controlled Substances

6    Act for them to prevail.  And that's why we believe

7    that is appropriate grounds for removal.

8          My colleagues are going to -- you may want

9    it hear again from the plaintiffs.  My colleagues,

10   however, after hearing this great argument, are

11   going to address the issue of why we believe that a

12   stay is, in fact, appropriate after you've heard

13   argument on -- on the remand, the why -- given the

14   national importance of these and given similar

15   issues pending before the MDL judge, why it's

16   actually appropriate for Your Honor to --

17          THE COURT:  All right.

18          MR. JORDAN:  -- stay his decision at this

19   time.

20          THE COURT:  All right.

21          MR. MASSIE:  Good morning, Judge.  Wade

22   Massie from Abingdon on behalf of the Purdue

1    defendants, as I said earlier.

2         We're the parties that filed the

3    supplemental notice, so the original notice was

4    filed and then we appeared and filed a supplemental

5    notice.  Our supplemental notice deals with the

6    issue of fraudulent joinder and severance.  So those

7    are the two subjects I wanted to discuss this

8    morning.

9         Just to orient the Court, there are four of

10   these distributor defendants and they are described

11   in the complaint at paragraphs 92 to 113.  One of

12   them -- it's a little confusing because some of the

13   names are the same, but one of them is called

14   McKesson.  And that one is described as one of the

15   largest distributors of opioid pain medications in

16   the country, including Virginia.  And in 2015,

17   McKesson had a net income in excess of 1.5 billion,

18   so that's one of the distributors that's been sued

19   here.

20        A second one that was sued is McKesson

21   Medical-Surgical.  I want to pass over that one just

22   for a second.  The third one that has been sued here

```
 1    is called Cardinal or Cardinal Health.  And Cardinal

 2    Health is alleged to distribute pharmaceuticals to

 3    retail pharmacies and institutional providers to

 4    customers in all 50 states, including Virginia, so

 5    it's a large entity.

 6           And the last one named is AmerisourceBergen

 7    Corporation, and it likewise is alleged to

 8    distribute pharmaceuticals to retail pharmacy and

 9    institutional providers and customers in all 50

10    states.  And those three are alleged to have

11    employees as well, obviously, doing this.

12           Now, the one we're focused on was this one

13    I passed over for a second, McKesson Medical.  And

14    the allegation against them in this part of the

15    complaint is that it engages in business in Virginia

16    as a wholesale distributor of pharmaceuticals,

17    including opioids.  And they also allege they have a

18    registered agent.  That's what they say about them.

19           Now, if you look at the way the complaint

20    is set up, it has a section in it beginning about

21    paragraph 166, which they call themselves -- they

22    call the particulars regarding each defendant
```

```
 1    group's role in the opioid epidemic.  And if you go

 2    through that section of the complaint dealing with

 3    these distributor defendants, there are specific

 4    references to McKesson, that first one I mentioned,

 5    to Cardinal, and to Amerisource, but there is no

 6    mention at all of McKesson Medical-Surgical, which

 7    is the one we're putting in question.

 8            And I would invite the Court's attention to

 9    paragraph 293 which has a specific lineup of claims

10    against those companies.  And it's really the -- the

11    meat of the complaint because it says, Despite their

12    duties -- and they go through this long windup of

13    what the duties are -- despite their duties,

14    defendants have knowingly and negligently allowed

15    diversion.  And then they cite DEA action taken

16    against the companies, and they say the wrongful

17    conduct and inaction have resulted in numerous funds

18    and penalties including -- and that's where they

19    list these other companies, and no mention of this

20    Medical-Surgical -- McKesson Medical-Surgical.

21            So we question that and we ask, you know,

22    where are the specific allegations against this
```

1    company that they allowed their product to be

2    diverted in Alexandria, that Alexandria was damaged

3    by this.  All -- all we have and you've heard here

4    are these general allegations but no -- no real

5    specific allegation as to McKesson Medical-Surgical.

6    So we think the case is similar to one that was

7    decided a few years ago in Salisbury versus Purdue

8    Pharma where the plaintiff sued nine manufacturers

9    and two pharmacies.

10         And, of course, they said the pharmacy

11    should have protected what they were doing and the

12    manufacturers should have protected what they're

13    doing, but there was no real connection in the case.

14    There was no real allegation that the pharmacies had

15    actually sold the opioids to the plaintiffs.  And

16    the Court in that case found fraudulent joinder.

17         We acknowledge this standard that's been

18    stated in the cases, this no possibilities standard,

19    but the cases also say it's to be applied reasonably

20    and there must be a reasonable basis for predicting

21    liability.  And when we have a challenge to this, we

22    ask where is the causation, where is the claim that

1    it happened in this city, where is the claim that

2    something was diverted that this particular entity

3    sold.  There are really no answers to that.

4          The plaintiff's brief and also their

5    argument here this morning addresses other cases

6    that they say support their position.  And they --

7    they say in their brief, and I think they said this

8    morning, that the district courts have already

9    rejected all of our arguments, already heard and

10   rejected all of our arguments.  That was the --

11   that's the statement.  We submit that's not

12   accurate.  They cite cases from South Carolina, they

13   cite a case or two from Maryland, they cite a case

14   from West Virginia, they cite some cases from Texas,

15   but none of those cases deal with this point that

16   we're raising.

17         South Carolina cases involved a different

18   fraudulent joinder argument altogether.  It involved

19   an argument that the plaintiff had no real intention

20   of obtaining a judgment against one of these minor

21   players that had been named in the complaint.  So --

22   but there were in that case specific allegations

1   made.  So it's not like the situation here where we

2   don't have those allegations.

3        The Maryland cases did not involve a claim

4   of fraudulent joinder at all.  There was no claim of

5   fraudulent joinder in those cases that were cited to

6   you.  There was a misjoinder argument, which is

7   something different.

8        The West Virginia case did involve

9   fraudulent joinder, but a very specific issue of

10  West Virginia law, whether an employee or agent

11  could have liability under the circumstances.

12  Again, there were allegations against the person.

13  The question was did that state a claim under West

14  Virginia law.  So it is a different situation.

15        Likewise, the Texas cases that are cited

16  did not involve fraudulent joinder but this concept

17  of fraudulent misjoinder, which is something

18  different.

19        There are, I understand, a lot of cases,

20  many cases in the MDL now that involve this

21  situation of a removal based on fraudulent joinder

22  or misjoinder or severance.  In fact, one of my

1   colleagues collected and filed a list of those cases

2   in the Western District of -- Western District of

3   Virginia.  I don't think it's filed here, but it's

4   filed very recently, on January 15th.  And in that

5   filing they identified 97 cases where there was a

6   removal and then a subsequent transfer to the MDL,

7   which has -- has similar issues pending.  So that's

8   fraudulent joinder.

9           On the severance part, that is a -- that is

10  a completely separate argument and position.  And if

11  you look at a severance issue, if the person is not

12  fraudulently joined -- so if -- even if the person

13  is in the case, the Court would need to consider

14  whether that person should be severed.

15          And Rule 21 would allow a severance so long

16  as the nondiverse party is not required to be joined

17  under Rule 19.  So if they're not an indispensable

18  party, not a required party under 19, they can be

19  severed in order to maintain diversity.

20          Now, we submit there's no question that

21  this party, McKesson Medical, is not an

22  indispensable party to this case.  If anything, it

1    would be a permissive party that -- that one may add

2    or not add, but it would not be an indispensable

3    party.

4          The argument is made that McKesson

5    Medical's liability is intertwined with other

6    defendants; but, again, that's not a prohibition

7    against a severance.  Rule 20 assumes that there's

8    some connection among the defendants to bring in the

9    same case, that they arise out of a common

10   transaction or occurrence or have a common issue.

11   So that's -- that's not a prohibition.

12         There is a case that's been cited to Your

13   Honor, Mayor & City Council of Baltimore, that

14   suggests that in that case some defendants were

15   indispensable; but if it's cited for the concept

16   that any joint tortfeasor, any joint wrongdoing is

17   indispensable, then that's -- that's directly

18   contrary to Supreme Court law in the Temple case

19   where the Supreme Court said that joint tortfeasors

20   are not indispensable parties, they are permissive,

21   and you don't have to add them.

22         And we know this just from practice because

1     if you -- if you had a situation where every joint

2     tortfeasor had to be in every case -- every tort

3     case, there wouldn't be too many cases that could

4     go.  A lot of them -- a lot of cases would be

5     disqualified just because you didn't have every

6     possible tortfeasor there in the case.

7              So we submit that -- that the Court ought

8     to consider, if it considers this defendant properly

9     joined, it ought to sever this defendant and exclude

10    it from the rest of the case.

11             I'll just make one -- one more point, if I

12    may, Judge, and I'll sit down.  There's also a

13    suggestion made that diversity has to exist at the

14    time the complaint is filed.  And, of course, we

15    know that to be the general rule.  You have to have

16    diversity at the time the complaint was filed.

17             It's obviously true generally, but Rule 21

18    is a big exception to that, so this severance is

19    a -- is a huge exception.  There are Fourth Circuit

20    cases, this Beatrice Pocahontas case and U.S.

21    Supreme Court case, Newman-Green, which holds

22    explicitly that you can sever even after an action

 1   was brought, even on appeal.  So we think we're on

 2   solid ground on that.

 3         Thank you, Judge, for your time.  I

 4   appreciate it.  Thank you.

 5         MR. CONRAD:  Your Honor, unless I'm

 6   mistaken, I think the defendants have gone through

 7   all their responses.  So I don't think there is

 8   anyone else from the defendants' side.

 9         THE COURT:  All right.  Just quickly now,

10   I've heard a lot of argument.

11         MR. CONRAD:  I know you have, Your Honor,

12   and I want to go very, very quickly.  And I'm going

13   to go in the exact same order I started and the same

14   order you've heard it.  So I want to make sure I

15   just touch on a couple of quick things on each

16   point.

17         So I'll start with the CAFA issue.  So,

18   first of all, there are -- there are two main points

19   that I want to make, one is legal and the other is

20   factual.  The legal points I want to make are that

21   the West Virginia v. CVS Pharmacy case, the Fourth

22   Circuit case, specifically said that the whole issue

1   of whether or not the complaint was or was not a

2   parens patriae action, which is something the

3   defense had talked about, was not critical to the

4   analysis.  That was what was critical to the

5   analysis was that the complaint was not brought

6   under a state statute or rule of judicial procedure

7   similar to Rule 23.  Don't have that here, so West

8   Virginia is still on point.

9           Secondly, in the AU Electronics case, which

10  was a later Fourth Circuit case, the Court rejected

11  what's called the claim-by-claim approach, the

12  Fourth Circuit -- and adopted or embraced something

13  called a whole case approach.  What that means is

14  you can't just go claim by claim and say, well, this

15  particular claim looks like a class action,

16  therefore there's CAFA jurisdiction.  You have to

17  look at the complaint as a whole to determine

18  whether the complaint as a whole has CAFA

19  jurisdiction.  So that's the legal point.

20          The factual point I want to make is that

21  the defendants are simply incorrect on the

22  allegations in the complaint.  For example, they

 1   said that Count III includes claims on behalf of the

 2   city and its residents, that simply is not the case

 3   with this complaint.

 4          This complaint, Count III, is a Virginia

 5   Consumer Protection Act claim.  The Virginia

 6   Consumer Protection Act says plaintiff -- which is

 7   the City of Alexandria, seeks reimbursement of all

 8   monies paid for defendants' products by plaintiff,

 9   period.

10          It says, as a proximate result of

11   defendants' deceptive acts, defendants have caused

12   plaintiff, the city, to incur excessive costs

13   responding to the opioid crisis.  And then it lists

14   costs, including the cost of healthcare, emergency

15   medical center services, social services, same thing

16   in every single one of these counts.  I could go

17   through and read them all to you --

18          THE COURT:  Well, no, don't do -- don't do

19   that.  I understand you all don't agree on the facts

20   and you're not going to get those resolved right now

21   by simply repeating again what you told me before.

22   So if you've got something new to tell me, go ahead,

1    but I'm getting tired of listening now to -- I've

2    given you more time than normal to do the -- make

3    the motion, anyway.  And I'm getting a little

4    impatient now, so about two minutes I want to wrap

5    it up.

6              MR. CONRAD:  I got you, Your Honor.

7    Federal question, the only point I make is they

8    point to one count, count VI.  And they say, Well,

9    even though it says it's under Virginia law and

10   incorporates federal law, therefore, because count

11   VI involves necessarily some discussion of federal

12   law at some point, therefore, there's federal

13   question jurisdiction under this narrow loophole.

14             Bottom line is there are many more than

15   count VI.  There's a bunch of counts, and all the

16   other counts involve state law.  And, in fact, count

17   VI involves state law.  Their only point is that

18   count VI state law, the Virginia controlled

19   substances legislation, also refers and incorporates

20   some federal law.  And that doesn't transform it

21   into a -- into this exception for Gunn v. Grable --

22   excuse me, Gunn v. Minton.

1          The second point I make is it necessarily

2    raises is only one of the four required elements

3    that they have to meet.  They also have to show that

4    the issue is substantial in the sense of it impacts

5    the federal system as a whole.  And there are opioid

6    context cases that talk about the fact that this was

7    not substantial because it doesn't impact the

8    whole -- the -- the federal system as a whole in the

9    way that the Supreme Court has said is important for

10   these cases.  So that particular area of federal

11   jurisdiction is not available.

12          THE COURT:  Okay.  Now --

13          MR. CONRAD:  I'm sorry, Your Honor, I

14   have -- I have one more piece on the diversity

15   jurisdiction.  So 30 more seconds.

16          THE COURT:  30 seconds, then I've heard

17   enough.

18          MR. CONRAD:  Yes, sir.  With respect to

19   the -- there are multiple cases out of South

20   Carolina, out of Maryland that all deal specifically

21   with fraudulent joinder.  And in particular in South

22   Carolina, they all deal with this question of

```
1    whether or not there's sufficient allegations.  It's

2    a complaint-by-complaint analysis.  We pointed out

3    to you all of the -- all of the pieces --

4           THE COURT:  Okay.  I'll take a look at

5    those cases.

6           MR. CONRAD:  Also Mr. Massie, in talking

7    about Rule 21, he was talking specifically about

8    severing McKesson Medical.  That's actually not what

9    they've asked for.  They've asked for severance of

10   all the distributor defendants, not just one,

11   McKesson Medical.  I would argue to the extent

12   they're limiting somehow for the first time here

13   today, it's totally improper, Rule 21 doesn't apply

14   to that.

15           And to the extent that they want to stick

16   with their argument that all distributor defendants

17   should be severed, that should be rejected as well.

18           THE COURT:  All right.

19           MR. MENCHEL:  May it please the Court, my

20   name is Matthew Menchel and I represent the Express

21   Scripts defendants and I'm here to discuss the

22   motion to stay.
```

1          THE COURT:  Okay.

2          MR. MENCHEL:  Your Honor, I recognize that

3   I'm in the Eastern District of Virginia and that

4   using the words "motion to stay" an anathema to this

5   district.  But briefly deferring a ruling in this

6   particular case under these circumstances so that

7   the jurisdictional issues that are being heard in

8   the MDL, which are the same issues that are being

9   heard here so that these issues can be joined there,

10  makes a lot of sense.  And it's also consistent with

11  the case law --

12         THE COURT:  That's the questions of remand

13  as well.  Jurisdiction, remand, do the cases stay

14  here, all of those issues will be decided --

15         MR. MENCHEL:  Yes, Your Honor.

16         THE COURT:  -- in the MDL then.

17         MR. MENCHEL:  Yes, Your Honor.  Right now,

18  as was mentioned by my other colleague, there are

19  approximately 100 cases pending that have been

20  removed on jurisdictional issues.  The vast majority

21  of those have motions to remand attached to them or

22  will have motions to remand attached to them going

```
 1    forward.

 2              And what the Eastern District of Virginia

 3    has said in the Commonwealth of Virginia

 4    versus [sic] ex rel. Integra, courts frequently

 5    grant stays while awaiting a JPML decision.  That's

 6    what we're doing here, we're expecting that decision

 7    be handed down in March -- about the inclusion of a

 8    pending case into an MDL, even when other motions

 9    remain pending before the district court, including

10    motions to remand.

11              Another decision in the Eastern District,

12    Pagliara versus Federal Home Loan Mortgage

13    Corporation, said the same thing.  Additionally,

14    courts frequently grant stays in cases when an MDL

15    decision is pending.

16              THE COURT:  Who decided that?  Those two

17    cases you're citing.

18              MR. MENCHEL:  One second, please, Your

19    Honor.  This was Judge Cacheris, did I say that

20    correctly?

21              THE COURT:  Yeah.

22              MR. MENCHEL:  And the Commonwealth of
```

 1   Virginia case, Judge Lauck.

 2          THE COURT:  All right.

 3          MR. MENCHEL:  I think we cited these in our

 4   papers, Your Honor.

 5          THE COURT:  Go ahead.

 6          MR. MENCHEL:  So what we have here, Your

 7   Honor, is this general rule that courts defer ruling

 8   on the issues like motions to remand when there's an

 9   MDL because it makes perfect sense to do so.  There

10   are 1,600 cases currently in the MDL that are almost

11   factually identical to the cases that exist here

12   today.  So it makes sense to stay this case so that

13   it can be brought into the MDL.

14          There's already been a decision made by the

15   JPML conditionally transferring the case in because

16   it recognizes factually they look to be exactly the

17   same as many other copycat complaints that have

18   already been filed there.

19          So what I want to use by way of example is

20   this CAFA issue which Your Honor has heard a

21   tremendous amount of argument about here today.

22   It's a complex difficult issue and it's also an

1    issue of first impression that will be decided by

2    whatever court decides it, because there's unique

3    facts and circumstances here.  This is not a parens

4    patriot act -- patriae act that's been resolved

5    before, it's an issue of first impression.

6           And there are currently, right now, pending

7    before Judge Polster in the MDL other CAFA remand

8    motions addressing the same issues.  We cited those

9    in our papers.  One is Jefferson County, it's in the

10   Eastern District of Missouri, that's been

11   transferred into the MDL.  And another one, Your

12   Honor, is the Noble County in the Southern District

13   of Ohio case, also removed on CAFA, also right now

14   pending before Judge Polster on the motion to

15   remand.

16          So those issues as well as the federal

17   question issues and the diversity jurisdictions and

18   all those severance issues, those issues are already

19   in the MDL in very similar cases.  And so it makes

20   sense from a point of judicial economy and for

21   uniformity rulings that these -- this case gets

22   transferred there as well and you defer this rule

1     and let Judge Polster decide that.

2            Now, just what I'm expecting you're going

3     to hear from plaintiff's counsel is they can't bear

4     the delay, it's going to -- it's going to prejudice

5     them severely if there's a delay.  I want to remind

6     Your Honor that in this case the complaint was filed

7     ten months ago in the Circuit Court of Alexandria,

8     they've never served us with it, never.  And three

9     times the Circuit Court set this down for status

10    conference and three times it was deferred until we

11    finally removed it out.  They're not in a rush to

12    prosecute this case.

13           THE COURT:  All right.  You're giving me

14    rebuttal before I hear the --

15           MR. MENCHEL:  Fair enough.

16           THE COURT:  -- hear the argument.

17           MR. MENCHEL:  Fair enough, Your Honor.

18    I'll sit down and I'll address it on rebuttal.

19    Thank you.

20           MR. SPIVEY:  Your Honor, Ed Spivey here on

21    behalf of the plaintiff.  Let me start where

22    Mr. Menchel ended up.  This case is one of several

1    that have been before the Virginia Supreme Court.

2    On November 20th the Virginia Supreme Court issued

3    an order that to our knowledge the Virginia Supreme

4    Court has only issued a handful of times in history.

5              On November 20th the Virginia Supreme Court

6    certified a three-judge panel of Circuit Court

7    judges to preside over these consolidated

8    proceedings, Judge Filson from Rockbridge County,

9    Judge Milam from Danville, and Judge Hurley from

10   Tazewell County.

11             And the reason that this City of Alexandria

12   case was postponed was because of that very issue.

13   It takes six plaintiffs, under Virginia procedure

14   and under Virginia Multiple Claimant Litigation Act,

15   to consolidate cases.  And so there were subsequent

16   cases filed over the course of last year and it has

17   been the plan of the City of Alexandria and every

18   one of the other affected localities who are

19   plaintiffs in cases in circuit courts that have been

20   removed across Virginia to consolidate and to deal

21   with these matters efficiently, in an organized way.

22             And so, Your Honor, the Virginia Supreme

1   Court's action shows that, at the highest levels,

2   the Virginia state court system is already involved

3   in this.  And the defendants have yanked us out of

4   that state court system that was already underway

5   under the guise of judicial economy without any

6   regard for the efforts of the Virginia court system

7   and, under the barest and slimmest of reads, sought

8   removal jurisdiction.  And that's what brings us

9   here today, Your Honor.

10          If the defendants get their way, the City

11   of Alexandria will be sent off to a federal court in

12   Cleveland beside plaintiffs like the City of Chicago

13   and the State of Alabama with only the slimmest hope

14   that their issues can be resolved anywhere in the

15   foreseeable future.  Because here's what we know

16   about the MDL -- and let me say at the very outset,

17   none of my comments are intended as a criticism of

18   Judge Polster who has presided over that MDL since

19   its inception and who is doing the best job humanly

20   possible to try to manage a behemoth case.

21          What we have a gripe with, Your Honor, is

22   that these defendants have sought to embroil our

1    client in it when it is against our client's will.

2    Indisputably, our client, who is the master of its

3    complaint, has filed only state claims in a state

4    Circuit Court; and there is no basis to disrupt and

5    derail that effort through this junket to Federal

6    Court.

7            Here's what we know about the MDL, Your

8    Honor --

9            THE COURT:  All of your friends or your

10   compatriots are in federal court, haven't all these

11   cases been removed?

12           MR. SPIVEY:  Your Honor, no, we -- we've

13   got a dozen cases in state court, Circuit Court,

14   that were removed, yes, you're correct; and they are

15   all the subjects of motions to remand like the one

16   pending here.

17           I think it's important to point out there

18   were other state -- Virginia localities who have

19   filed suit, the defendants cite to them in their

20   briefing, but this is an important thing to know,

21   those cases were filed in federal court.  They

22   contained federal statutory causes of action.  Those

 1   plaintiffs wanted to be in federal court and wanted

 2   to be in the MDL.  There was absolutely no

 3   opposition to the transfer of those cases to the

 4   MDL.

 5           The City of Alexandria and another dozen

 6   plaintiffs like the City of Alexandria, in a number

 7   that will grow, want to be in state court.  So those

 8   other Virginia cases that are now in the MDL are

 9   completely beside the point.

10           THE COURT:  Right.  Well, the ones that

11   were filed simply under state -- supposedly state

12   causes of action; those have all been removed as

13   well, have they not?

14           MR. SPIVEY:  They have, Your Honor.  And

15   they're all pending before District Court Judge

16   Dillon in the western district before whom we

17   appeared yesterday on these same types of issues,

18   these same motions.

19           So here's what's important to know about

20   the MDL because it's a critical distinction from any

21   of the cases they've cited.  Judge Polster convened

22   that MDL in December of 2017, 14 months ago.  And

1    we've put into the record the transcript of his

2    first organizational meeting of counsel, and in that

3    first meeting he specifically said with regard to

4    motions to remand that had already been filed in

5    cases that were referred to him initially in the MDL

6    in December of 2017, that he was going to let them

7    hang there.  And then he issued an order which put a

8    moratorium on the filing of motions.  This is an

9    order that was entered on April 11th, 2018, and he

10   specifically referenced motions to remand.  And what

11   that order says is the Court will adopt a procedure

12   based on input from the parties to efficiently

13   address the filing and briefing of motions for

14   remand at an appropriate time in the MDL

15   proceedings.

16          Here's what I can tell you with absolute

17   certainty.  No procedure has ever been adopted in

18   the MDL to deal with those motions for remand as we

19   stand here today, and those motions for remand that

20   were part of the very initial group of cases that

21   got sent to the MDL in 2017 -- and there were many

22   of them -- stand unresolved and undecided today.

 1    That's what we know about the MDL.

 2          And so -- and, again, I'm sure that's for

 3    good reason, but what we're saying, Your Honor, is

 4    you've got to look past this tantalizing prospect

 5    that the defendants hold out to you that, oh, this

 6    is just a short delay.  Oh, it won't be -- it won't

 7    be that bad on the plaintiff.  Your Honor, we know

 8    that if we get transferred into that MDL, we're

 9    never getting out or we're not getting out for a

10    very long time.

11          And so here's what I'd like to make sure

12    you understand about the timing of things, the

13    defendants, the day after or two days after they

14    removed this case, filed what's called -- called a

15    Notice of Tag-Along Action with a judicial panel on

16    multidistrict litigation.  They identified this case

17    to the JPML and that, as they knew it would,

18    triggered a reflexive order from the JPML,

19    conditionally transferring this case into the MDL.

20          Now, that was a conditional transfer order

21    and it specifically said that the plaintiff had an

22    opportunity to file a notice of opposition, which we

 1   did timely about two -- two weeks ago.  We have

 2   also, pursuant to the JPML's rules, filed a motion

 3   to vacate that CTO.  And we are told, although we

 4   have no assurance, that nothing will happen in the

 5   meantime.  We are told that that motion to vacate

 6   will be heard at the JPML's next hearing session in

 7   late March 2019.

 8          We know of no assurance that the JPML won't

 9   act on that CTO before then, but the defendants have

10   stated that that is when the motion to vacate will

11   be heard.  And what we also know is that, in the

12   course of this opioid MDL, the JPML has never failed

13   to render final a conditional transfer order.

14          So I think everybody agrees that if we get

15   to that date, this case is going to be transferred.

16   And without any desire on our part, our case is

17   yanked out of the City of Alexandria and we're off

18   in Cleveland for some indeterminant time.

19          Your Honor, that is not the way federal

20   jurisdiction is supposed to work.  What these

21   defendants are asking you to do is to engage in

22   nonresolution of what should be the primary first

1      and all-important question that this Court has about

2      this case; mainly do you have jurisdiction over it.

3      That is the way the system of limited federal

4      jurisdiction is supposed to work, and that, Your

5      Honor, we need to look no further than to the Fourth

6      Circuit to know that.

7            In several cases the litmus test is laid

8      out.  The threshold question in any matter brought

9      before a federal court is whether the Court has

10     jurisdiction to resolve the controversy involved,

11     that's 17th Street Associates.  Courts typically

12     must construe removal jurisdiction strictly because

13     of the significant federalism concerns implicated by

14     it.  That's a Fourth Circuit's decision in Maryland

15     Stadium.

16           The burden of demonstrating jurisdiction

17     resides with the party seeking removal.  Thus, in

18     deciding whether to remand, this Court must resolve

19     all doubts about the proprietary of removal in favor

20     of retained state jurisdiction, that's the Fourth

21     Circuit in the Hartley case.  That's the -- that's

22     the way things are supposed to work.

1           The way the defendants would have you

2     address this stands that on its head.  It's

3     completely upside down, they urge you not to resolve

4     jurisdiction.  And, Your Honor, we submit that the

5     prejudice to our client if the Court would -- would

6     do that is extreme because this is not a short

7     delay, it's a small delay on the way to a very

8     lengthy delay in a situation where there is no basis

9     for federal jurisdiction.

10          You just heard more argument than you

11    wanted to hear on the issue of remand, but, Your

12    Honor, when you consider those arguments and you

13    consider the on-point precedent from the Fourth

14    Circuit, the on-point precedent from all the other

15    district courts within the Fourth Circuit that have

16    dealt with these identical issues, the on-point

17    precedent of a case out of the District Court of New

18    Hampshire decided by Judge Barbadoro about a year

19    ago that utterly rejected this Class Action Fairness

20    Argument they've come up with a year ago, and

21    they're still making the argument to you today.

22          Your Honor, when you consider those things,

1    you will see that there is no basis for federal

2    jurisdiction, and that should be your primary

3    inquiry.  I realize it requires ignoring this

4    enticing prospect that they want to hold out that

5    because there is going to be just a short delay,

6    this won't harm the City of Alexandria, but, Your

7    Honor, that is utterly false.

8              So I don't want to belabor.  I do think

9    it's important, though.  While I mentioned that New

10   Hampshire case to point out -- Your Honor may know

11   Judge Barbadoro, I do not.  However, in the course

12   of that case, he also dealt with and denied a motion

13   to stay.  And in doing so he talked about his

14   experience both as a transferor and transferee MDL

15   judge.  And, importantly, he talked about the fact

16   that he had sat on the Judicial Panel of

17   Multidistrict Litigation and he endorsed the view

18   that we suggest is the proper one that transferee

19   courts -- MDL transferee courts and the JPML welcome

20   the intervention of the transferor district court on

21   issues like remand.

22              And, Your Honor, we only have to look to

1    events of earlier this week to know that that's the

2    case here.  On Monday, Judge Polster in the MDL has

3    decided only four motions to remand.  None involved

4    cases like ours.  None involved local government

5    plaintiffs.  Two were tribal cases, cases where

6    Native American tribes had made claims against the

7    opioid industry; and Judge Polster dispensed with

8    the removal issues in that case under the federal

9    officer basis for removal and, in fact, in that case

10   denied motions to remand.

11           Two other cases, both of them brought by

12   state attorney generals, one on behalf of the State

13   of Montana, one on behalf of the State of Kentucky,

14   those are not the kind of cases we're talking about

15   here that are sitting there backlogged on the shelf.

16           THE COURT:  I understand.

17           MR. SPIVEY:  But here is the important

18   thing that happened on Monday, he decided the State

19   of Kentucky's case and he wrote a very short

20   opinion.  And you know what he relied on, he relied

21   on other district court cases that had refused to

22   stay their proceedings and had denied motions to

1    remand -- I'm sorry, granted motions to remand.

2          He granted the State of Kentucky's and the

3    State of Montana's motion to remand, and in doing so

4    he was glad to have the precedent of other District

5    Courts to base his opinion on.  So that's a false

6    premise here, Your Honor.

7          The -- the -- the need --

8          THE COURT:  Well, if he's doing it, maybe

9    he ought to do this one.

10          MR. SPIVEY:  But, Your Honor, here's the

11    situation -- that's why I say --

12          THE COURT:  I know what you're going to say

13    and, just because I work quick, I'm not sure that

14    makes the difference.  Just because I give you a

15    quick decision, I'm not sure that I buy that the

16    City of Alexandria needs a quick decision or it's

17    going to be harmed with a delayed decision, but I --

18    I understand what you're telling me.

19          Let me -- let me hear the man -- I mixed it

20    up a little while ago.  I think we've belabored it

21    long enough.  I didn't come out prepared to give you

22    a decision here this morning and I'm not going to do

1    it.  I'm going to take a look -- a further look at

2    this and you'll get a decision from me pretty

3    promptly.

4         MR. SPIVEY:  I appreciate that, Your Honor.

5    And I do appreciate the dispatch with which we've

6    gotten here.

7         Outside the front door of this courthouse

8    it says what is our mantra, and this is a

9    prototypical example of it, justice delayed here is

10   justice denied.  That doesn't mean you need to rule

11   from the bench today and I'm not asking you to and I

12   welcome your deliberate review of the papers because

13   I think you'll see there's no basis for federal

14   jurisdiction here and so that -- that's our

15   fundamental point.

16        THE COURT:  All right.  Is there anything

17   else you want to tell me now?

18        MR. MENCHEL:  Briefly, if I may.  Your

19   Honor, what the plaintiff wants in terms of where

20   they file a lawsuit, I think Your Honor knows, is

21   not the dispositive issue.  When you file what is,

22   in fact, in all but name a class action, it gets

1    removed under CAFA.  When you file a case that

2    implicates interstate questions of federal law, it

3    gets removed to the federal courts because it

4    implicates important federal questions.

5         Despite what my colleague has said, the

6    CAFA issue that's been argued here today has not

7    been argued anywhere else and resolved yet in this

8    country.  Okay.  It will be a decision of first

9    impression.  It ought to be resolved by Judge

10   Polster because there are similarly situated

11   plaintiffs with the same motion pending before him.

12   Judicial economy and uniformity of rulings weighs in

13   favor of letting Judge Polster do this.

14        Also real quickly, in the -- this argument

15   that they're going to be irreparably harmed by

16   joining 15- or 1,600 other cases that allege the

17   exact same thing was squarely rejected in the

18   Northern -- in the District Court in the Northern

19   District of Oklahoma in the Board of County

20   Commissioners of Pawnee County versus Purdue Pharma.

21   Exact same argument they made there and this is what

22   the Court said, quote, The plaintiff argues that it

1    will be irreparably harmed by a transfer to the MDL

2    because, quote, Judge Polster in the MDL has held

3    that he will not act on any motions to remand and

4    placed a moratorium on filing such motions.  Exactly

5    the same argument that he just made.

6            However, at a hearing on December 13th,

7    2017, Judge Polster expressed his preference for,

8    quote, a framework that would allow consistent

9    resolution of remand motions.  But the Court goes on

10   to note a preliminary assessment of the

11   jurisdictional issues in this case suggest that they

12   are not straightforward.  Moreover, similar issues

13   have already arisen in cases that have been

14   transferred to the MDL.  The Court allowed the stay

15   and allowed the case to be transferred into the MDL,

16   and a hundred other Courts have done the same thing

17   for the same reason.

18           We think it's in the interest of judicial

19   economy and uniformity that you should transfer

20   the -- defer the ruling and allow the transfer to go

21   forward.

22           Thank you, Your Honor.

1          THE COURT:  All right.  I'll take a look at

2    this and get you all an answer as quickly as I can.

3          MR. SPIVEY:  Thank you, Your Honor.

4          MR. JORDAN:  Thank you, Your Honor.

5          THE COURT:  All right.  We'll adjourn until

6    Monday morning at 9:30.

7          (Whereupon, the proceedings at 11:54 a.m.

8    were concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

1          COMMONWEALTH OF VIRGINIA AT LARGE, to wit:

2              I, REBECCA MONROE, Court Reporter and

3      Notary Public in and for the Commonwealth of

4      Virginia at Large, and whose commission expires

5      August 31, 2021, do certify that the foregoing is a

6      true, correct, and full transcript of the

7      proceedings.

8              I further certify that I am neither related

9      to nor associated with any counsel or party to the

10     proceedings; nor otherwise interested in the event

11     thereof.

12

13

14

15     _____

16              Rebecca Monroe

17              Notary Public

18              Commonwealth of Virginia at Large

19              Notary No. 7243327

20

21

22

**WORD INDEX**

**< $ >**
**$100**  44:*12*

**< 1 >**
**1,500**  41:*10*
**1,600**  68:*10*  84:*16*
**1.1**  43:*20*
**1.5**  51:*17*
**1:18cv1536**  1:*7*
**10:24**  1:*21*
**100**  14:*16*  66:*19*
**10019**  3:*16*
**101**  31:*5*
**10th**  4:*20*
**11:54**  86:*7*
**111**  31:*11*
**112**  31:*18*
**113**  32:*3*  51:*11*
**11th**  75:*9*
**1350**  3:*14*
**13th**  85:*6*
**14**  74:*22*
**15**  84:*16*
**150**  2:*7*  6:*6*
**15th**  57:*4*
**1600**  4:*20*
**166**  52:*21*
**17th**  78:*11*
**18**  1:*12*
**1855**  46:*20*
**19**  38:*18*  57:*17, 18*
**1900**  6:*16*
**19104**  5:*8*
**19th**  6:*7*  46:*19*

**< 2 >**
**20**  58:*7*
**200**  4:*20*
**20003**  2:*17*
**20004**  4:*15*
**201**  6:*15*
**2015**  51:*16*

**2017**  74:*22*  75:*6,*
*21*  85:*7*
**2018**  75:*9*
**2018-1536**  7:*3*
**2019**  1:*12*  77:*7*
**202**  2:*18*  4:*16*
**2021**  87:*5*
**208**  5:*13*
**20th**  71:*2, 5*
**21**  12:*17*  24:*9*
*26:2, 16*  35:*21*
*36:6, 8, 20*  37:*3, 5*
*38:18*  57:*15*
*59:17*  65:*7, 13*
**2100**  2:*8*
**213**  4:*10*
**215**  5:*9*
**228**  33:*18*
**2288**  5:*14*
**23**  15:*9, 18, 22*
*16:3*  18:*17*  19:*4*
*41:17*  61:*7*
**23219**  4:*21*
**23510**  2:*9*
**239-3494**  4:*16*
**24212**  5:*15*
**259**  32:*15, 17, 22*
*33:1*
**266**  33:*1*
**276**  5:*16*
**282**  33:*7, 14*  34:*3*
**283**  33:*20*
**2929**  5:*7*
**293**  34:*5, 6, 10*
*53:9*

**< 3 >**
**3**  44:*6*
**30**  64:*15, 16*
**300**  2:*16*
**305**  6:*18*
**306**  33:*15*  34:*3*
**31**  87:*5*
**3100**  3:*8*

**31st**  3:*15*
**33131**  6:*17*
**333**  4:*7*
**335**  47:*16*
**371**  44:*22*
**37203**  3:*9*
**377**  45:*1*

**< 4 >**
**4**  44:*16*
**401**  1:*19*
**415**  6:*9*
**431**  45:*11*
**434-7000**  3:*10*
**455**  47:*18*
**499-5212**  2:*18*

**< 5 >**
**50**  52:*4, 9*
**54**  46:*20*
**576-1079**  4:*10*
**582-4752**  6:*9*

**< 6 >**
**6**  43:*8*
**611**  3:*7*
**615**  3:*10*
**624-3183**  2:*10*
**628-5151**  5:*16*

**< 7 >**
**700**  2:*15*
**7243327**  87:*19*
**757**  2:*10*
**77**  47:*16*
**78**  46:*21*

**< 8 >**
**89**  47:*18*

**< 9 >**
**9:30**  86:*6*
**90071**  4:*9*
**92**  30:*20*  31:*1*

**51**:*11*
**94111**  6:*8*
**950**  4:*14*
**967-6117**  6:*18*
**97**  57:*5*
**99**  31:*4*
**994-4000**  5:*9*

**< A >**
**a.m**  1:*21*  86:*7*
**ability**  38:*2*
**Abingdon**  5:*15*
*50:22*
**able**  38:*4*
**above-entitled**  1:*16*
**absent**  38:*3, 5, 7*
**absolute**  75:*16*
**absolutely**  28:*16*
*35:7*  42:*15*  46:*7*
*74:2*
**abundantly**  35:*7*
**accurate**  55:*12*
**acknowledge**  54:*17*
**Act**  11:*16*  12:*7,*
*19*  13:*4, 16*  14:*2,*
*10*  19:*16*  22:*1, 3,*
*7*  46:*22*  47:*17*
*48:17, 19, 21*  49:*6,*
*8, 10, 11, 16*  50:*6*
*62:5, 6*  69:*4, 4*
*71:14*  77:*9*  85:*3*
**acted**  22:*18*
**Action**  7:*3*  12:*7,*
*19*  13:*16*  14:*2, 10,*
*13, 14, 15, 17, 20,*
*22*  15:*3, 6, 13, 14*
*16:6, 16, 17*  17:*2,*
*10, 12*  18:*20*  19:*7,*
*15*  41:*17, 19*  46:*2,*
*5, 11*  47:*15, 20, 21*
*48:2*  53:*15*  59:*22*
*61:2, 15*  72:*1*
*73:22*  74:*12*
*76:15*  79:*19*
*83:22*

**actions** 13:5 19:2 38:7 46:16
**activity** 34:8
**acts** 18:13 22:17 23:1 62:11
**actual** 13:11
**add** 58:1, 2, 21
**added** 24:21
**addiction** 32:9
**additional** 24:22
**Additionally** 67:13
**address** 10:13, 19 40:22 50:11 70:18 75:13 79:2
**addressed** 10:20 12:11 19:8 40:11, 12
**addresses** 14:1 55:5
**addressing** 69:8
**adequacy** 46:7
**adjourn** 86:5
**administer** 44:19
**administrative** 16:3
**admittedly** 49:19
**adopt** 75:11
**adopted** 61:12 75:17
**ADRIANA** 6:11 8:22
**agencies** 45:5
**agent** 52:18 56:10
**ago** 54:7 70:7 74:22 77:1 79:19, 20 82:20
**agree** 62:19
**agreement** 34:14
**agrees** 77:14
**ahead** 62:22 68:5
**al** 1:8 6:3 7:5
**Alabama** 72:13
**Alexandria** 1:3, 5, 11, 20 7:4, 10, 14, 17, 20 8:1, 4

10:13 11:1, 2, 10 15:17 17:5, 7, 21 18:2 24:16 32:2, 12 34:4 43:22 45:18 54:2, 2 62:7 70:7 71:11, 17 72:11 74:5, 6 77:17 80:6 82:16
**allegation** 29:20 52:14 54:5, 14
**allegations** 11:20, 21 18:6 25:16 27:1 28:15, 18 29:5 30:10, 11, 14 31:5 33:2, 4, 15 35:3, 8, 9 53:22 54:4 55:22 56:2, 12 61:22 65:1
**allege** 52:17 84:16
**alleged** 30:6, 7, 18 37:14 52:2, 7, 10
**allegedly** 29:14
**all-important** 78:1
**allow** 18:20 42:4 57:15 85:8, 20
**allowable** 47:5
**allowed** 47:14 53:14 54:1 85:14, 15
**allows** 46:15
**Alston** 4:6, 13 8:9, 13 9:17
**altogether** 55:18
**amend** 24:15
**amended** 24:15, 18, 21
**America** 27:10
**American** 81:6
**Americas** 3:14
**Amerisource** 53:5

**AmerisourceBergen** 52:6
**amount** 68:21
**analogize** 29:2

**analysis** 61:4, 5 65:2
**anathema** 66:4
**ANDREW** 2:12 7:19
**Angeles** 4:9
**answer** 86:2
**answers** 55:3
**anti-removal** 41:7
**anyway** 63:3
**apparent** 46:5
**appeal** 60:1
**appearance** 7:6
**Appearances** 2:22 3:1, 22 4:1, 22 5:1, 22 6:1
**appeared** 51:4 74:17
**applicable** 16:13
**application** 14:3
**applied** 54:19
**apply** 41:6 65:13
**appointing** 13:7
**appreciate** 60:4 83:4, 5
**approach** 61:11, 13
**appropriate** 14:5 48:5, 8 49:18, 21 50:7, 12, 16 75:14
**approximately** 66:19
**April** 75:9
**Arch** 5:7
**area** 20:9 64:10
**argue** 17:1 25:14 65:11
**argued** 84:6, 7
**argues** 12:17 84:22
**argument** 12:15 14:2 20:2 24:11 25:20, 22 26:16, 16 27:22 28:1 35:20 36:3 37:5,

7 39:1 40:7 48:7 50:10, 13 55:5, 18, 19 56:6 57:10 58:4 60:10 65:16 68:21 70:16 79:10, 20, 21 84:14, 21 85:5
**arguments** 24:7 26:14 39:19 40:22 55:9, 10 79:12
**arisen** 85:13
**articulated** 48:11
**asked** 65:9, 9
**asking** 42:16, 18 77:21 83:11
**aspects** 16:3
**assessment** 85:10
**associated** 87:9
**Associates** 78:11
**assumes** 58:7
**assurance** 77:4, 8
**attached** 66:21, 22
**attends** 41:8
**attention** 53:8
**Attorney** 15:5 17:15 81:12
**AU** 61:9
**August** 87:5
**authorities** 39:22
**authority** 39:21 42:8, 10
**authorizing** 15:12
**available** 11:12 64:11
**Avenue** 2:15 3:14
**awaiting** 67:5

**< B >**
**back** 16:22 32:15 46:18 47:9
**backlogged** 81:15
**bad** 18:13 23:1 76:7
**balance** 20:15

Baltimore  38:*12*
58:*13*
bar  29:*21*  30:*2*
35:*17, 18*
Barbadoro  79:*18*
80:*11*
barest  72:*7*
base  82:*5*
Based  27:*18*
56:*21*  75:*12*
bases  12:*5*  14:*10*
basic  10:*15*
basically  10:*17*
basis  19:*14, 19*
20:*1*  23:*14*  35:*6,*
*19*  48:*19*  54:*20*
73:*4*  79:*8*  80:*1*
81:*9*  83:*13*
bear  70:*3*
Beatrice  59:*20*
beginning  52:*20*
behalf  1:*21*  2:*3*
3:*4*  4:*3*  5:*4*  6:*3*
7:*9, 13, 17, 20*  8:*1,*
*3, 7, 10, 16, 19, 22*
9:*3, 5*  10:*12*  11:*2*
16:*7, 7*  17:*4, 6, 16*
18:*3*  40:*18*  43:*1,*
*14*  45:*17*  47:*6*
48:*3, 4*  50:*22*
62:*1*  70:*21*  81:*12,*
*13*
behemoth  72:*20*
belabor  80:*8*
belabored  82:*20*
believe  37:*1*  50:*6,*
*11*
bench  83:*11*
benefit  11:*7*  40:*20*
best  72:*19*
beyond  22:*13*
35:*14*
big  59:*18*
Bill  8:*13*  40:*18*

47:*6*
billion  51:*17*
bind  16:*8*  44:*8*
45:*19*
Bird  4:*6, 13*  8:*10,*
*13*  9:*17*
Biscayne  6:*15*
bit  17:*1*
blame  38:*3, 5*
Blanton  47:*14*
Board  84:*19*
bold  30:*21*
borne  42:*21*
Bosher  47:*17*
bottom  21:*10*
39:*17*  40:*10*
63:*14*
Boulevard  6:*15*
bound  43:*15*  44:*1,*
*13, 21*
Box  5:*14*  26:*12*
brief  28:*19*  43:*8,*
*12*  55:*4, 7*
briefing  10:*20*
13:*2, 9*  23:*17*
28:*12*  73:*20*
75:*13*
briefly  66:*5*  83:*18*
briefs  18:*22*
bring  16:*6*  19:*3*
42:*1*  44:*14*  46:*16*
47:*14*  48:*1*  58:*8*
bringing  18:*2*
42:*6, 7*  43:*14*
brings  72:*8*
broaden  26:*2*
BROOKS  3:*12*
7:*21, 22*
brought  11:*10*
15:*4, 13, 17*  16:*15*
17:*4*  18:*15*  46:*13,*
*16*  60:*1*  61:*5*
68:*13*  78:*8*  81:*11*

BROUGHTON
4:*18*  8:*5, 6*  9:*15,*
*16*
bucket  26:*7*
Bull  46:*20*  47:*13*
bunch  63:*15*
burden  78:*16*
business  52:*15*
buy  82:*15*

< C >
Cacheris  67:*19*
CAFA  12:*7*  14:*4,*
*18*  15:*7, 8*  19:*4, 7,*
*18*  41:*1, 4, 8, 14*
46:*11, 12*  48:*5*
60:*17*  61:*16, 18*
68:*20*  69:*7, 13*
84:*1, 6*
California  4:*9*
6:*6, 8*
call  14:*14*  52:*21,*
*22*
called  12:*7*  14:*8*
15:*11*  20:*2, 6*
25:*7*  30:*17*  35:*1*
36:*7*  46:*20*  47:*10,*
*13, 17*  51:*13*  52:*1*
61:*11, 13*  76:*14, 14*
Canoles  2:*6*  7:*9,*
*13*  10:*12*
capacity  18:*3*
27:*6*  42:*1, 13*
caps  30:*21*
Cardinal  52:*1, 1,*
*1*  53:*5*
carefully  42:*13*
Carolina  26:*17, 19*
37:*13*  55:*12, 17*
64:*20, 22*
carve  39:*9*
Case  1:*7*  10:*22*
12:*12, 20*  13:*1, 14*
14:*8*  15:*2, 4, 19,*
*22*  16:*12, 13, 15*

17:*10, 15*  18:*15,*
*21, 22*  19:*3, 12*
20:*6, 7*  22:*4*
23:*14*  24:*1, 13, 13,*
*14*  26:*22, 22, 22*
28:*16*  29:*2, 3*
36:*2, 15*  38:*2, 9,*
*10*  39:*11*  41:*7*
42:*3, 6, 6, 7*  46:*20*
47:*13*  54:*6, 13, 16*
55:*13, 13, 22*  56:*8*
57:*13, 22*  58:*9, 12,*
*14, 18*  59:*2, 3, 6,*
*10, 20, 21*  60:*21,*
*22*  61:*9, 10, 13*
62:*2*  66:*6, 11*
67:*8*  68:*1, 12, 15*
69:*13, 21*  70:*6, 12,*
*22*  71:*12*  72:*20*
76:*14, 16, 19*
77:*15, 16*  78:*2, 21*
79:*17*  80:*10, 12*
81:*2, 8, 9, 19*  84:*1*
85:*11, 15*
cases  12:*11*  13:*13*
14:*16, 16*  21:*20*
22:*17*  29:*3*  30:*9,*
*12*  37:*10*  40:*3*
41:*3, 8*  46:*18*
47:*13, 19*  54:*18,*
*19*  55:*5, 12, 14, 15,*
*17*  56:*3, 5, 15, 19,*
*20*  57:*1, 5*  59:*3, 4,*
*20*  64:*6, 10, 19*
65:*5*  66:*13, 19*
67:*14, 17*  68:*10,*
*11*  69:*19*  71:*15,*
*16, 19*  73:*11, 13,*
*21*  74:*3, 8, 21*
75:*5, 20*  78:*7*
81:*4, 5, 5, 11, 14,*
*21*  84:*16*  85:*13*
categories  10:*16,*
*17*

category  12:9, 13
14:19, 20  20:3
30:19
causation  54:22
cause  34:16
caused  32:11
43:6  45:3  62:11
causes  73:22
74:12
center  62:15
century  46:19
certain  18:6  36:20
certainly  41:13
certainty  75:17
certified  71:6
certify  87:5, 8
chain  11:4, 7
27:14, 18
challenge  54:21
changed  48:15
channels  27:16
CHEMERINSKY
4:5  8:8, 9
Cherokee  41:7
cherry  18:6
Chicago  72:12
Circuit  11:2
12:12  13:5, 8, 17,
18, 19, 21  15:2, 20
16:1, 10, 14  17:9,
15  19:9, 12  20:4,
8, 20  21:1  22:8,
11  24:1, 16  26:13
38:22  40:10
59:19  60:22
61:10, 12  70:7, 9
71:6, 19  73:4, 13
78:6, 21  79:14, 15
Circuit's  14:7
78:14
circulated  13:12
circumstances
22:21  37:8  39:13
56:11  66:6  69:3

cite  43:18  44:3
48:16, 17  53:15
55:12, 13, 13, 14
73:19
cited  18:21  27:13
28:19  30:10  44:2
56:5, 15  58:12, 15
68:3  69:8  74:21
cites  22:1
citing  67:17
citizen  25:11
42:11, 19
citizens  17:7  18:8
43:14, 15  44:10
47:14
CITY  1:5  7:3, 10,
13, 17, 20  8:1, 3
10:12  11:1, 2, 10
15:16  17:5, 6, 7,
14, 21  18:1, 4
38:12  42:9, 9
43:13, 22  45:17
55:1  58:13  62:2,
7, 12  71:11, 17
72:10, 12  74:5, 6
77:17  80:6  82:16
city's  38:13
Civil  7:3  15:10
41:18
claim  11:15, 16
16:5  17:4, 16, 20,
20  18:1, 2  19:7
20:11  21:3, 7, 11,
15, 18, 19  22:12
23:5, 11  24:3
25:15  29:18
43:13, 14  44:14
48:9, 13, 14  49:15,
17, 22  50:3  54:22
55:1  56:3, 4, 13
61:14, 14, 15  62:5
Claimant  13:4
71:14
claim-by-claim

61:11
claimed  21:8
claiming  17:3
claims  11:9, 12, 15,
15, 18  20:10  21:9,
17, 19  22:6  23:20
24:4  37:16, 19
38:8, 14, 15  39:8
46:17  53:9  62:1
73:3  81:6
Class  12:7, 19
13:15  14:2, 10, 13,
20  15:3, 6, 14
16:5, 6, 7, 16, 17,
19, 20  17:2, 10, 11,
13, 18, 19, 20, 22
18:20  19:7, 15
41:17, 19  43:9
46:2, 5, 11  47:20
48:4  61:15  79:19
83:22
CLAUDE  1:17
clear  12:21  13:17,
20  30:7  35:7, 17
39:3
cleared  35:17
clearly  29:6  37:3
41:12
CLERK  7:3
Cleveland  72:12
77:18
client  73:1, 2  79:5
client's  73:1
closed  27:10
cloth  40:9
cobble  40:4
colleague  48:8
66:18  84:5
colleagues  50:8, 9
57:1
collected  57:1
collectively  31:15
colorfully  20:7
come  13:22  79:20

82:21
commencing  1:20
comments  72:17
Commerce  3:7
commission  87:4
Commissioners
84:20
common  21:18, 18
23:2, 7  43:9  47:3,
8, 9, 11  58:9, 10
Commonality  46:6
common-law  11:14
Commonwealth
11:14  18:18
19:13  67:3, 22
87:1, 3, 18
companies  53:10,
16, 19
Company  9:6
47:16  54:1
compare  43:3
compatriots  73:10
complaint  11:9, 19,
19  15:16  18:7, 9,
10  22:1  24:16, 18,
21  25:2, 3, 7, 10,
17  26:4  28:4, 14,
19, 22  30:20, 21
31:12  32:14, 16
33:9, 17  34:5
35:5, 7  37:14
39:3  40:6  42:14,
15  43:4, 13, 19
44:5  46:6  51:11
52:15, 19  53:2, 11
55:21  59:14, 16
61:1, 5, 17, 18, 22
62:3, 4  70:6  73:3
complaint-by-comp
laint  65:2
complaints  68:17
complaint's  35:3
complete  38:20
completely  57:10
74:9  79:3

complex 27:9
68:22
complied 22:2
comply 49:7
concept 56:16
58:15
concerns 78:13
conclude 19:14
concluded 39:1
86:8
concludes 38:16
conditional 76:20
77:13
conditionally
68:15 76:19
conditions 16:2
conduct 53:17
conference 70:10
confusing 51:12
Congress 14:11
41:9
conjunctive 20:18
connection 54:13
58:8
CONRAD 2:5
7:12, 12 10:2, 8,
10, 11 28:9 30:16
33:12, 14 35:13
39:17 60:5, 11
63:6 64:13, 18
65:6
consider 57:13
59:8 79:12, 13, 22
considers 59:8
consistent 66:10
85:8
consolidate 13:4
71:15, 20
consolidated
14:17 71:7
consolidation 13:9
conspiracy 11:15
21:19
construe 78:12
consume 44:19

Consumer 11:16
62:5, 6
contain 16:2
contained 73:22
contains 11:19, 20
context 14:1, 4
15:3 19:11 28:2
29:4 36:21, 22
37:6 39:11 40:12
64:6
contexts 40:3
continued 2:22
3:1, 22 4:1, 22
5:1, 22 6:1
contrary 37:18
58:18
contributed 32:8
Control 48:17
Controlled 22:1, 3,
7 33:22 48:18, 21
49:1, 5, 8, 10, 11,
15 50:5 63:18
controls 27:9
controversy 78:10
convened 74:21
copy 28:3, 5
copycat 68:17
corporation 31:6
52:7 67:13
correct 48:9
73:14 87:6
correctly 67:20
CORY 5:5 9:7
cost 42:20 62:14
costs 45:5 62:12,
14
Council 58:13
Counsel 7:6 9:17
41:22 70:3 75:2
87:9
counsel's 40:22
Count 23:4, 6
44:6, 16, 20 45:8,
9 48:15, 15, 16

50:4 62:1, 4 63:8,
8, 10, 15, 16, 18
country 32:12
51:16 84:8
counts 11:9
62:16 63:15, 16
county 37:22
38:6 42:9 69:9,
12 71:8, 10 84:19,
20
couple 12:14
18:11 26:18
60:15
course 36:15
54:10 59:14
71:16 77:12
80:11
COURT 1:1, 18
7:11 9:4, 9, 13, 22
10:7, 9, 11 11:2
12:10 13:3, 5, 6, 8,
22 14:7 16:21
18:21, 22 19:10,
14 24:16, 17, 19
27:18 28:7, 20
29:16 30:14
33:11, 13 35:11,
18, 22 36:17
37:21 38:16, 19
39:15 40:16 41:6
42:17 43:20
45:18 46:13, 21
47:12 48:10
49:19 50:17, 20
51:9 54:16 57:13
58:18, 19 59:7, 21
60:9 61:10 62:18
64:9, 12, 16 65:4,
18, 19 66:1, 12, 16
67:9, 16, 21 68:2,
5 69:2 70:7, 9, 13,
16 71:1, 2, 4, 5, 6
72:2, 4, 6, 11 73:4,
6, 9, 10, 13, 13, 21
74:1, 7, 10, 15

75:11 78:1, 9, 9,
18 79:5, 17 80:20
81:16, 21 82:8, 12
83:16 84:18, 22
85:9, 14 86:1, 5
87:2
Courthouse 1:20
83:7
courts 13:1 26:12
29:4, 10, 17 36:7
37:6 38:22 40:12
55:8 67:4, 14
68:7 71:19 78:11
79:15 80:19, 19
82:5 84:3 85:16
Court's 36:11
53:8 72:1
create 33:21 36:8,
9 38:20 40:8
created 46:2
crisis 32:11 41:13
62:13
critical 61:3, 4
74:20
criticism 72:17
CTO 77:3, 9
currently 68:10
69:6
customers 52:4, 9
CVS 14:8 15:1
42:3 60:21

< D >
D.C 2:17 4:15
damaged 54:2
damages 17:3
43:6, 7, 9, 10 45:21
Danville 71:9
Dark 41:7
date 13:11 77:15
day 76:13
days 76:13
DEA 34:13, 15, 15,
18 53:15

deal  37:10  55:15
64:20, 22  71:20
75:18
dealing  53:2
deals  15:2  51:5
dealt  79:16  80:12
December  74:22
75:6  85:6
deceptive  62:11
Dechert  5:6
decide  70:1
decided  54:7
66:14  67:16  69:1
79:18  81:3, 18
decides  69:2
deciding  78:18
decision  14:6, 6, 7
38:13  50:18  67:5,
6, 11, 15  68:14
78:14  82:15, 16,
17, 22  83:2  84:8
decisions  14:3
26:18  37:12
40:14
decline  14:21
deemed  12:9
14:11  16:16  17:7
defend  38:7
Defendant  1:9
4:3  5:4  6:3
11:22  12:2, 3
22:18  24:12  25:6
26:1, 8  28:14
29:6, 14, 22  52:22
59:8, 9
defendants  8:7, 10,
20  9:1  10:18
11:3, 21  12:3
14:19  17:1  18:1,
5, 14  21:8, 22
22:2, 6  23:2
24:18, 22  25:1, 9,
14  26:3, 5, 6, 7, 10
27:2, 4, 4, 17, 19,
20  29:1  30:10, 12,

12, 17, 18, 19, 22
31:3, 4, 10, 12, 15,
17, 19, 22  32:4, 10,
18  33:3, 6, 8, 10,
16, 20  34:9, 11, 20,
22  35:10  36:1, 4,
20  37:16  38:2, 4,
7, 8, 14, 16, 19
39:6, 7, 14, 20
40:2, 19, 22  44:17
45:3, 15  51:1, 10
53:3, 14  58:6, 8,
14  60:6, 8  61:21
62:8, 11, 11  65:10,
16, 21  72:3, 10, 22
73:19  76:5, 13
77:9, 21  79:1
defendant's  23:17
defense  61:3
defer  68:7  69:22
85:20
deferred  70:10
deferring  66:5
definitively  50:4
delay  37:20  70:4,
5  76:6  79:7, 7, 8
80:5
delayed  82:17
83:9
deliberate  83:12
deliver  11:8
delivering  27:7
delivery  27:8
demonstrably
43:16
demonstrating
78:16
denied  80:12
81:10, 22  83:10
departments  45:4
depends  21:3
derail  73:5
described  26:21
51:10, 14

descriptions  28:21
designed  46:12
desire  77:16
Despite  53:11, 13
84:5
destroy  25:13
29:7
detailed  28:21
determine  36:11
61:17
determined  39:12
determining  22:5
devoid  28:14
difference  82:14
different  24:7
31:2  40:4  49:9
55:17  56:7, 14, 18
difficult  68:22
Dillon  74:16
direct  32:13
directed  33:6
direction  40:15
directly  13:22
16:13  32:10, 13
58:17
discretion  37:2
discuss  51:7  65:21
discussion  63:11
disgorgement
45:16
disparate  40:8
dispatch  83:5
dispensable  38:17
dispensed  81:7
dispositive  83:21
dispute  12:1
20:16
disputes  25:10
disqualified  59:5
disrupt  73:4
distinct  37:17
distinction  74:20
distinguish  16:11
distrib  39:5

distribute  52:2, 8
distributed  32:1
distributing  39:7
distribution  11:4,
8  27:14  48:22
distributor  25:1, 8
26:3, 5, 7  30:17,
18, 22  31:3, 4, 7,
10, 12, 14, 16, 19,
22  32:4, 9, 18
33:3, 6, 8, 9, 16, 19
34:9, 11, 21  35:10
36:1, 4  39:7, 13
51:10  52:16  53:3
65:10, 16
distributors  11:6
27:4  34:15  38:5
45:14  51:15, 18
DISTRICT  1:1, 2,
18, 19  13:22
19:10  26:12
29:11  36:7  37:6
38:22  40:12  47:1
55:8  57:2, 2  66:3,
5  67:2, 9, 11
69:10, 12  74:15,
16  79:15, 17
80:20  81:21  82:4
84:18, 19
diversion  32:20
53:15
diversity  12:1, 13
24:6, 6  25:11, 13
29:7  35:20  36:9
38:20  57:19
59:13, 16  64:14
69:17
diverted  27:15
54:2  55:2
Division  1:3
doing  52:11
54:11, 13  67:6
72:19  80:13  82:3,
8

door  83:7
doubt  22:14
doubts  78:19
dozen  73:13  74:5
dozens  35:9
drug  27:2  48:17
drugs  27:7, 8, 10,
14  39:6, 8
duties  33:19
53:12, 13, 13

< E >
earlier  51:1  81:1
East  5:13
EASTERN  1:2, 19
66:3  67:2, 11
69:10
economy  69:20
72:5  84:12  85:19
Ed  7:8  70:20
EDWARD  2:4
effect  25:3  36:8
effectively  32:5
efficiency  37:19
efficiently  71:21
75:12
effort  73:5
efforts  72:6
either  15:8
Electronics  61:9
element  20:19
22:4
elements  20:17
49:22  64:2
embraced  61:12
embroil  72:22
emergency  62:14
emphasized  21:5
22:11
employee  56:10
employees  52:11
enacted  41:9, 14
ended  70:22
endorsed  80:17

enforcement
32:11  34:19
engage  77:21
engages  52:15
enrichment  45:9
ensure  41:14
entered  16:9
24:17, 20  25:5
44:9  75:9
enticing  80:4
entire  34:2
entirely  49:18
entities  11:13
27:5
entity  15:4  19:9
25:7  34:14  52:5
55:2
epidemic  53:1
equity  41:21  45:9
46:15, 17  47:10, 19
Especially  41:9
ESQUIRE  2:4, 5,
12, 13  3:5, 12  4:5,
12, 18  5:5, 11  6:4,
11, 12, 13
essentially  10:19
et  1:8  6:3  7:5
event  87:10
events  81:1
every,  22:11
everybody  77:14
evidence  22:19, 20
23:1
ex  67:4
exact  60:13  84:17,
21
exactly  25:19
28:20  47:22
68:16  85:4
example  61:22
68:19  83:9
exceeded  30:2
exception  59:18,
19  63:21

excess  51:17
excessive  62:12
exchange  45:11
exclude  59:9
excuse  11:1  14:12
21:13  39:5  63:22
exercise  37:2
exist  59:13  68:11
exists  18:1  23:5
47:19
expected  45:15
expecting  67:6
70:2
expenditures  43:11
expense  37:20
experience  80:14
expires  87:4
explain  16:11
explicitly  59:22
EXPRESS  6:3
8:16, 17, 20  9:1, 3
40:20  65:20
expressed  85:7
expressly  49:4
extent  33:5  37:4
65:11, 15
extreme  79:6

< F >
face  46:5
facially  29:19
facilitate  41:9
fact  13:10  18:11,
17, 20  22:16
24:14  26:21
29:16  39:10  44:1
49:21  50:12
56:22  63:16  64:6
80:15  81:9  83:22
facts  37:14  44:18
45:16  62:19  69:3
factual  25:16
28:15  60:20
61:20

factually  38:14
39:4  68:11, 16
failed  27:19  77:12
failure  32:3
Fair  70:15, 17
Fairness  12:7, 19
13:16  14:2, 10
19:16  79:19
false  80:7  82:5
far  30:1  34:17
39:10
favor  40:1, 1
78:19  84:13
feature  15:6
federal  11:18
12:8, 9  14:12, 12
15:9, 22  19:15, 19,
20, 22  20:1, 3, 12,
13, 14, 15, 22  21:4,
7, 9, 12, 14, 21
22:10, 13, 15
23:11, 12, 14, 21
26:9, 12  32:21
34:7  35:19, 20
36:12, 14  37:22
40:9  41:2  42:4, 5
46:13  48:6, 7, 11,
12, 18, 18, 19, 21
49:14, 21  63:7, 10,
11, 12, 20  64:5, 8,
10  67:12  69:16
72:11  73:5, 10, 21,
22  74:1  77:19
78:3, 9  79:9  80:1
81:8  83:13  84:2,
3, 4
federalism  78:13
feet  30:4
fertilizer  47:16
file  15:9, 10  47:6
76:22  83:20, 21
84:1
filed  10:4, 4, 5
11:1, 10  15:16
41:19  51:2, 4, 4

57:*1, 3, 4*  59:*14, 16*  68:*18*  70:6
71:*16*  73:*3, 19, 21*
74:*11*  75:*4*  76:*14*
77:*2*
**filing**  22:*16*  57:5
75:*8, 13*  85:*4*
**filings**  26:*21*
**filling**  32:7
**Filson**  71:*8*
**final**  45:*8*  77:*13*
**finally**  70:*11*
**find**  49:*20*
**finds**  23:3  27:*19*
**fine**  10:*9*
**firm**  7:*9, 16, 19*
8:*9*
**first**  9:*14, 21*  10:*1, 5*  11:*1*  12:6
14:*13*  29:*1*  30:*9*
36:*5, 18*  53:*4*
60:*18*  65:*12*  69:*1, 5*  75:*2, 3*  77:*22*
84:*8*
**fit**  20:*9*
**five**  31:*14*
**flip**  31:*9*  32:*15*
**Floor**  3:*15*  4:*8*
6:*7*
**Florida**  6:*17*
**flow**  27:*9*
**Flying**  12:*12*  20:*6, 7*
**focused**  25:*22*
36:3  52:*12*
**following**  2:*22*
3:*22*  4:*22*  5:*22*
31:*1, 2*
**foot**  30:*4*
**forcing**  38:*6*
**foregoing**  27:*18*
87:*5*
**foreseeable**  72:*15*
**forth**  46:*11*  49:6

**forward**  67:*1*
85:*21*
**found**  54:*16*
**founded**  23:*11*
**four**  20:*17*  31:*14*
51:*9*  64:*2*  81:*3*
**Fourth**  12:*12*
13:*16, 18, 21*  14:7
15:*2, 20*  16:*1, 10, 14*  17:*9, 15*  19:*9*
20:*4, 8, 20*  21:*1*
22:*8, 11*  24:*1*
26:*13*  38:*22*
40:*10*  59:*19*
60:*21*  61:*10, 12*
78:*5, 14, 20*  79:*13, 15*
**framework**  41:*15*
85:*8*
**Franchising**  20:*8*
**Francisco**  6:*8*
**frankly**  19:*13*
35:*4*  39:*20*
**fraudulent**  12:*16*
24:*8*  25:*15, 22*
26:*15*  29:*2, 12*
51:*6*  54:*16*  55:*18*
56:*4, 5, 9, 16, 17, 21*  57:*8*  64:*21*
**fraudulently**
25:*18*  27:*21*  28:*1*
29:*8, 14, 22*  57:*12*
**Frederick**  9:*6*
**frequently**  67:*4, 14*
**friends**  73:*9*
**front**  16:*12*  83:*7*
**full**  87:*6*
**fundamental**
49:*17*  83:*15*
**funds**  43:*11*
44:*15*  53:*17*
**further**  32:*15*
78:*5*  83:*1*  87:*8*
**future**  43:*10*

72:*15*

**< G >**
**General**  15:5
41:*4*  54:*4*  59:*15*
68:*7*
**generally**  18:*7*
59:*17*
**generals**  81:*12*
**general's**  17:*16*
**getting**  63:*1, 3*
76:*9, 9*
**give**  82:*14, 21*
**given**  21:3  46:*10*
50:*13, 14*  63:*2*
**giving**  70:*13*
**glad**  82:*4*
**go**  9:*14*  10:*1, 21*
22:*18*  28:*10*  30:*5*
31:*3*  33:*7*  46:*8*
53:*1, 12*  59:*4*
60:*12, 13*  61:*14*
62:*16, 22*  68:*5*
85:*20*
**goes**  46:*18*  47:*9*
85:*9*
**going**  10:*13, 19*
12:*18, 22*  19:*18*
24:*5*  25:*19*  37:*11*
41:*1, 20*  50:*8, 11*
60:*12*  62:*20*
66:*22*  70:*2, 4, 4*
75:*6*  77:*15*  80:*5*
82:*12, 17, 22*  83:*1*
84:*15*
**Good**  7:*11, 18, 21*
8:*2, 5, 8, 12, 15, 18, 21*  9:*2*  28:*2*
39:*12*  40:*17*
50:*21*  76:*3*
**gotten**  83:*6*
**governing**  48:*22*
**government**  11:*13*
15:*4*  19:*9*  34:*7*
81:*4*

**Grable**  48:*10*
49:*18*  63:*21*
**GRANT**  2:*13*  8:*3*
39:*14*  67:*5, 14*
**granted**  9:*10*
42:*4*  82:*1, 2*
**great**  50:*10*
**greatly**  32:*8*
**gripe**  72:*21*
**ground**  60:*2*
**grounds**  49:*20*
50:*7*
**GROUP**  4:3  7:*4*
8:*11, 14*  40:*20*
75:*20*
**group's**  53:*1*
**grow**  74:*7*
**guidance**  13:*17, 20*  20:*5*
**guise**  72:*5*
**Gunn**  12:*11*
63:*21, 22*

**< H >**
**hac**  9:*7*
**Hampshire**  79:*18*
80:*10*
**hand**  28:*5*
**handed**  67:*7*
**handful**  71:*4*
**hang**  75:*7*
**happen**  20:*21*
28:3  77:*4*
**happened**  24:*22*
55:*1*  81:*18*
**harm**  43:6  80:6
**harmed**  82:*17*
84:*15*  85:*1*
**Hartley**  78:*21*
**head**  79:*2*
**health**  32:*11*  52:*1, 2*
**healthcare**  62:*14*

hear 9:*21* 50:*9* 70:*3*, *14*, *16* 79:*11* 82:*19*
heard 1:*17* 50:*12* 54:*3* 55:*9* 60:*10*, *14* 64:*16* 66:*7*, *9* 68:*20* 77:*6*, *11* 79:*10*
hearing 13:*8*, *10*, *11*, *12* 50:*10* 77:*6* 85:*6*
Heisler 2:*14* 3:*6*, *13* 7:*16*, *19*, *22* 8:*3*
held 85:*2*
help 11:*7*
Hendricks 26:*17* 27:*19* 37:*12*, *13* 38:*6* 39:*2*
high 30:*3*
highest 72:*1*
HILTON 1:*17*
history 71:*4*
hold 13:*8* 76:*5* 80:*4*
Holdings 8:*17*
holds 59:*21*
Home 67:*12*
Honor 7:*8*, *12*, *15*, *18*, *21* 8:*2*, *5*, *8*, *12*, *15*, *18*, *21* 9:*2*, *15*, *16*, *21* 10:*2*, *10*, *15*, *22* 12:*5* 13:*15* 19:*17* 22:*16* 23:*17* 24:*5*, *9* 25:*19* 26:*4*, *14* 27:*22* 28:*3*, *9* 30:*16* 35:*14*, *15* 36:*5* 37:*9* 39:*17* 40:*17* 41:*3*, *16* 44:*4* 48:*14* 50:*16* 58:*13* 60:*5*, *11* 63:*6* 64:*13* 66:*2*, *15*, *17* 67:*19* 68:*4*, *7*, *20* 69:*12* 70:*6*, *17*, *20* 71:*22* 72:*9*,

*21* 73:*8*, *12* 74:*14* 76:*3*, *7* 77:*19* 78:*5* 79:*4*, *12*, *22* 80:*7*, *10*, *22* 82:*6*, *10* 83:*4*, *19*, *20* 85:*22* 86:*3*, *4*
HONORABLE 1:*17*
Honor's 9:*20* 12:*18*
Hope 4:*7* 72:*13*
huge 59:*19*
humanly 72:*19*
hundred 11:*20* 18:*10* 85:*16*
Hurley 71:*9*

< I >
idea 35:*22* 39:*12*
ident 33:*5*
identical 68:*11* 79:*16*
identified 26:*3* 31:*11* 57:*5* 76:*16*
identifies 31:*2*
identify 33:*21*
ignore 29:*8*
ignoring 35:*2* 80:*3*
II 23:*6*
III 62:*1*, *4*
imagine 30:*3*
impact 64:*7*
impacts 64:*4*
impatient 63:*4*
implement 32:*6*
implicated 78:*13*
implicates 84:*2*, *4*
importance 41:*12*, *14* 46:*12* 50:*14*
important 26:*11* 28:*20* 64:*9* 73:*17*, *20* 74:*19* 80:*9* 81:*17* 84:*4*
importantly 80:*15*

impression 69:*1*, *5* 84:*9*
improper 37:*2* 65:*13*
inaccurate 35:*5*
inaction 53:*17*
inception 72:*19*
include 33:*15* 34:*3*
included 33:*4*, *12* 35:*9*
includes 31:*13*, *19* 32:*18* 36:*3* 62:*1*
including 29:*10* 31:*8*, *22* 32:*2*, *4*, *10*, *12* 49:*2* 51:*16* 52:*4*, *17* 53:*18* 62:*14* 67:*9*
inclusion 67:*7*
income 51:*17*
inconvenience 37:*20*
Incorporated 7:*4* 47:*11*
incorporates 49:*3* 63:*10*, *19*
incorrect 61:*21*
increase 32:*8*
incur 45:*5*, *5* 62:*12*
indeterminant 77:*18*
indispensable 38:*17* 57:*17*, *22* 58:*2*, *15*, *17*, *20*
Indisputably 73:*2*
individual 14:*15*, *16* 42:*12*
induce 44:*19*
indulgence 12:*18*
industry 81:*7*
inhabitants 47:*1*, *7*
initial 36:*12* 75:*20*
initially 75:*5*

injured 18:*13* 42:*20* 43:*1*
injuries 48:*3*
injury 16:*20* 17:*19* 18:*7* 42:*20*
injustice 37:*18*
input 75:*12*
inquiry 80:*3*
instance 36:*19*
institutional 52:*3*, *9*
Integra 67:*4*
integral 32:*1*
intended 72:*17*
intention 55:*19*
interest 16:*19* 17:*8* 47:*4* 85:*18*
interested 87:*10*
interfere 20:*15*
interstate 84:*2*
intertwined 23:*8* 37:*15* 38:*15* 39:*4*, *8* 58:*5*
intervention 80:*20*
invalid 32:*7*
invite 53:*8*
invoking 41:*8*
involve 21:*9* 23:*21* 24:*7* 56:*3*, *8*, *16*, *20* 63:*16*
involved 19:*12* 27:*1*, *1*, *5* 55:*17*, *18* 72:*2* 78:*10* 81:*3*, *4*
involves 12:*14* 14:*15* 22:*4* 27:*3* 63:*11*, *17*
involving 38:*11*, *11*
irreparably 84:*15* 85:*1*
issue 10:*16* 13:*9*, *18* 19:*19* 20:*5*, *12*, *13* 21:*7*, *10*, *12*, *21* 22:*13*, *15* 23:*12*, *12*, *21* 35:*13* 36:*6*

38:*11*  45:*19*
48:*12*  49:*2*  50:*11*
51:*6*  56:*9*  57:*11*
58:*10*  60:*17, 22*
64:*4*  68:*20, 22*
69:*1, 5*  71:*12*
79:*11*  83:*21*  84:6
**issued**  13:*7*  26:*18*
71:*2, 4*  75:*7*
**issues**  12:*2*  23:*9*
39:*4, 8, 22*  40:*11,
13*  50:*15*  57:*7*
66:*7, 8, 9, 14, 20*
68:*8*  69:*8, 16, 17,
18, 18*  72:*14*
74:*17*  79:*16*
80:*21*  81:*8*  85:*11,
12*
**issuing**  34:*15*
**its**  38:*8, 15*  41:*18*
42:*2, 7, 12, 21*
43:*1, 14, 15*  44:*18*
45:*2, 4, 12, 14, 18*
62:*2*  72:*19*  73:*2*
79:*2*

**< J >**
**January**  1:*12*
13:*12*  57:*4*
**Jefferson**  69:*9*
**job**  72:*19*
**JOHAN**  2:*5*  7:*12*
10:*11*
**joinder**  12:*16*
24:*8*  25:*15, 22*
26:*15*  28:*1*  29:*3,
12*  51:*6*  54:*16*
55:*18*  56:*4, 5, 9,
16, 21*  57:*8*  64:*21*
**joined**  25:*18*
27:*21*  29:*8, 14, 22*
37:*17, 19*  40:*21*
57:*12, 16*  59:*9*
66:*9*
**joining**  84:*16*

**joint**  58:*16, 16, 19*
59:*1*
**JORDAN**  4:*12*
8:*12, 13*  40:*17, 18*
50:*18*  86:*4*
**JPML**  67:*5*  68:*15*
76:*17, 18*  77:*8, 12*
80:*19*
**JPML's**  77:*2, 6*
**JR**  2:*5*
**Judge**  1:*17*  14:*9*
26:*17*  27:*18*
37:*11, 13*  38:*6, 10*
39:*2*  41:*11*  50:*15,
21*  59:*12*  60:*3*
67:*19*  68:*1*  69:*7,
14*  70:*1*  71:*8, 9, 9*
72:*18*  74:*15, 21*
79:*18*  80:*11, 15*
81:*2, 7*  84:*9, 13*
85:*2, 7*
**judges**  13:*8*
26:*19*  38:*21*  71:*7*
**judgment**  16:*9*
43:*15*  44:*1, 8, 14*
55:*20*
**judgments**  43:*20*
**judicial**  15:*12, 18,
21*  18:*16, 19*  61:*6*
69:*20*  72:*5*  76:*15*
80:*16*  84:*12*
85:*18*
**JULIAN**  6:*4*  9:*3*
**jump**  30:*3*
**jumped**  30:*4*
**junket**  73:*5*
**jurisdiction**  10:*16,
18*  12:*8, 10, 14*
14:*2, 13, 18*  15:*3,
6, 8*  19:*5, 15, 20,
21, 22*  20:*1, 3, 22*
21:*13, 14*  22:*10*
23:*15*  24:*6, 6*
25:*12, 13*  26:*9*
35:*19, 21*  36:*13,*

14, 18*  37:*4, 22*
40:*9*  61:*16, 19*
63:*13*  64:*11, 15*
66:*13*  72:*8*  77:*20*
78:*2, 4, 10, 12, 16,
20*  79:*4, 9*  80:*2*
83:*14*
**jurisdictional**
39:*19*  66:*7, 20*
85:*11*
**jurisdictions**  69:*17*
**jury**  22:*22*  23:*3*
**justice**  83:*9, 10*

**< K >**
**Kaufman**  2:*6*  7:*9,
13*  10:*12*
**keeping**  37:*17, 18*
**Kentucky**  19:*13*
81:*13*
**Kentucky's**  81:*19*
82:*2*
**KEVIN**  3:*5*  7:*15*
**Kim**  6:*5, 14*  8:*9,
19, 22*
**KIMBERLY**  4:*5*
**kind**  19:*3*  39:*12*
81:*14*
**kinds**  19:*2*  38:*21*
**KISABETH**  4:*5*
**knew**  76:*17*
**know**  10:*22*  13:*2*
22:*16*  34:*18*  43:*2*
44:*9, 9*  53:*21*
58:*22*  59:*15*
60:*11*  72:*15*  73:*7,
20*  74:*19*  76:*1, 7*
77:*8, 11*  78:*6*
80:*10*  81:*1, 20*
82:*12*
**knowingly**  53:*14*
**knowledge**  71:*3*
**knows**  83:*20*
**Kobre**  6:*5, 14*

8:*19, 22*

**< L >**
**laid**  78:*7*
**language**  42:*14*
43:*4, 17*  46:*11*
**large**  52:*5*  87:*1, 4,
18*
**largest**  51:*15*
**late**  77:*7*
**Lauck**  68:*1*
**law**  7:*16, 19*  8:*9*
11:*11, 17*  20:*10,
11*  21:*4, 18, 18*
23:*2, 6, 7, 9*  24:*3*
32:*11, 21*  41:*21*
46:*2, 10, 14, 17*
47:*9, 11, 20*  48:*18,
22*  49:*3, 4, 6, 9, 12,
14, 14*  56:*10, 14*
58:*18*  63:*9, 10, 12,
16, 17, 18, 20*
66:*11*  84:*2*
**laws**  27:*12*
**lawsuit**  15:*4*  47:*4*
83:*20*
**lay**  33:*1*
**legal**  21:*6, 11*
22:*10, 12, 14*
23:*19*  24:*2*  33:*18*
36:*5*  40:*5*  60:*19,
20*  61:*19*
**legally**  33:*19*
38:*15*  39:*4*
**legislation**  63:*19*
**legitimate**  27:*16*
**legs**  25:*20*
**lengthy**  11:*19*
79:*8*
**letting**  84:*13*
**levels**  72:*1*
**liability**  33:*4*
54:*21*  56:*11*  58:*5*
**liable**  47:*2*
**likelihood**  30:*7*

likewise  52:7
  56:15
limited  78:3
limiting  65:12
line  21:10  39:17
  40:10  46:18
  63:14
lineup  53:9
list  53:19  57:1
listed  31:13, 15
listening  63:1
lists  62:13
Litigation  13:4
  14:1  71:14  76:16
  80:17
litmus  78:7
little  16:22  20:9
  51:12  63:3  82:20
LLC  20:7, 8
LLP  2:14  3:6, 13
  4:6, 13  5:6  6:5,
  14
Loan  67:12
local  9:17  81:4
localities  11:13
  71:18  73:18
located  1:19
long  18:10  29:19
  40:6  53:12  57:15
  76:10  82:21
look  29:11  39:18
  42:16  43:2  46:1,
  3  48:14  52:19
  57:11  61:17  65:4
  68:16  76:4  78:5
  80:22  83:1, 1
  86:1
looks  17:2  18:17
  42:13  43:16
  61:15
loophole  21:14
  23:13  63:13
Los  4:9
lot  56:19  59:4, 4

60:10  66:10
lots  24:3
low  29:21  30:2
LP  9:5

< M >
Main  2:7  5:13
  60:18
maintain  57:19
maintained  47:21
maintenance  46:5
majority  66:20
making  39:6
  79:21
man  82:19
manage  72:20
managers  11:7
  40:21
mantra  83:8
manufacture  36:19
manufacturer
  26:5, 10  32:17
  33:3  38:4  39:5,
  13  47:15  49:1
manufacturers
  11:5  27:3  31:20
  44:7, 11  45:13
  54:8, 12
March  67:7  77:7
Maryland  38:13
  55:13  56:3  64:20
  78:14
mass  14:14, 15, 17,
  21
MASSIE  5:11
  9:4, 5, 12  50:21,
  22  65:6
master  73:2
masters  42:15
material  40:4
  44:18  45:5, 16
materially  40:14
matter  1:16  9:22
  36:12  41:4, 12, 13,
  17, 20, 21  42:1

46:2, 10, 14, 15
  47:10, 17, 19  78:8
matters  15:7
  41:10, 10  71:21
MATTHEW  6:13
  8:19  65:20
Mayor  58:13
McKesson  25:8, 9,
  10, 11, 17  26:1
  28:13, 15, 22
  30:11  31:6, 13, 19,
  22  32:4, 10, 18
  33:4, 10  34:3, 17
  35:3, 8, 16  36:4
  51:14, 17, 20
  52:13  53:4, 6, 20
  54:5  57:21  58:4
  65:8, 11
MDL  41:11
  50:15  56:20  57:6
  66:8, 16  67:8, 14
  68:9, 10, 13  69:7,
  11, 19  72:16, 18
  73:7  74:2, 4, 8, 20,
  22  75:5, 14, 18, 21
  76:1, 8, 19  77:12
  80:14, 19  81:2
  85:1, 2, 14, 15
mean  15:20
  21:13  83:10
means  61:13
meant  16:11
measures  32:6
meat  53:11
Medical  25:8, 10,
  11, 17  26:1  28:13,
  16, 22  30:11  31:6,
  13, 20, 22  32:4, 10,
  19  33:5, 10  34:4,
  17  35:3, 8, 16
  52:13  57:21
  62:15  65:8, 11
medically  32:7
Medical's  58:5

Medical-Surgical
  51:21  53:6, 20, 20
  54:5
medications  51:15
meet  23:13  64:3
meeting  75:2, 3
member  16:4
  17:17, 19, 22
members  16:5, 20
  43:9
member's  17:20
memorandum
  34:13
MENCHEL  6:13
  8:18, 19  65:19, 20
  66:2, 15, 17  67:18,
  22  68:3, 6  70:15,
  17, 22  83:18
mention  22:22
  53:6, 19
mentioned  53:4
  66:18  80:9
merely  42:10
met  20:19
Miami  6:17
Milam  71:9
MILLER  2:12
  7:18, 19
million  44:12
minimize  37:19
minimum  16:4
minor  55:20
Minton  12:11
  63:22
minutes  12:4  63:4
misjoinder  56:6,
  17, 22
misrepresentations
  44:17  45:6
misrepresented
  45:15
Missouri  69:10
misstated  23:19
mistaken  60:6
mixed  82:19

**Monday**  81:*2, 18*
86:*6*
**monies**  44:*7*  62:*8*
**monitor**  32:*5*
**MONROE**  87:*2,
16*
**Montana**  81:*13*
**Montana's**  82:*3*
**months**  70:*7*
74:*22*
**moratorium**  75:*8*
85:*4*
**morning**  7:*11, 18,
21*  8:*2, 5, 8, 12, 15,
18, 21*  9:*2*  40:*17*
50:*21*  51:*8*  55:*5,
8*  82:*22*  86:*6*
**MORRIS**  2:*13*
8:*2, 3*
**Mortgage**  67:*12*
**motion**  9:*7, 9, 13,
18, 19*  10:*4, 5, 13,
17*  24:*15*  63:*3*
65:*22*  66:*4*  69:*14*
77:*2, 5, 10*  80:*12*
82:*3*  84:*11*
**motions**  9:*18*
66:*21, 22*  67:*8, 10*
68:*8*  69:*8*  73:*15*
74:*18*  75:*4, 8, 10,
13, 18, 19*  81:*3, 10,
22*  82:*1*  85:*3, 4, 9*
**move**  19:*18*  24:*5*
**Mullen**  4:*19*  8:*6*
**multidistrict**
76:*16*  80:*17*
**multiple**  9:*16, 18*
13:*4*  14:*15*  26:*12*
28:*11*  36:*7*  37:*6*
64:*19*  71:*14*
**multitude**  19:*6*
**municipality**  43:*6*

**< N >**

**name**  8:*9*  9:*3*
25:*9*  41:*19*  42:*22*
46:*3*  65:*20*  83:*22*
**named**  20:*7*  46:*1*
47:*1*  52:*6*  55:*21*
**names**  51:*13*
**narrow**  20:*22*
22:*9*  49:*20*  63:*13*
**narrowly**  25:*22*
**Nashville**  3:*9*
**national**  41:*12, 13,
15*  46:*12*  48:*22*
50:*14*
**Native**  81:*6*
**natural**  10:*6*
**necessarily**  21:*3*
44:*8*  46:*22*  63:*11*
64:*1*
**necessary**  13:*9*
38:*17*  48:*12*
49:*16*
**need**  16:*2*  57:*13*
78:*5*  82:*7*  83:*10*
**needs**  20:*21*  82:*16*
**negligence**  11:*14*
22:*19, 20*  23:*7*
29:*17, 20*  50:*4*
**negligent**  23:*3*
**negligently**  22:*18*
53:*14*
**neither**  87:*8*
**net**  51:*17*
**never**  70:*8, 8*
76:*9*  77:*12*
**New**  3:*16, 16*
62:*22*  79:*17*  80:*9*
**Newman-Green**
59:*21*
**nine**  54:*8*
**Noble**  69:*12*
**nondiverse**  24:*12,
22*  25:*6*  26:*1, 8*
28:*14*  57:*16*
**nonresolution**

77:*22*
**Norfolk**  2:*9*
**normal**  63:*2*
**Northern**  84:*18, 18*
**Northwest**  4:*14*
**notably**  45:*8*
**Notary**  87:*3, 17, 19*
**note**  7:*6*  26:*11*
85:*10*
**notice**  29:*18*  46:*9*
51:*3, 3, 5, 5*  76:*15,
22*
**notion**  41:*5*
**November**  71:*2, 5*
**nuisance**  11:*12*
21:*15, 17, 18*  23:*4,
6, 7*
**number**  11:*3, 21*
47:*3*  48:*15, 16, 16*
74:*6*
**numerosity**  46:*7*
**numerous**  43:*18*
44:*2, 5*  53:*17*

**< O >**
**observations**  37:*9*
**obtain**  37:*22*
**obtaining**  55:*20*
**obviously**  52:*11*
59:*17*
**occur**  42:*5*
**occurred**  12:*6*
**occurrence**  58:*10*
**officer**  81:*9*
**oh**  34:*10*  76:*5, 6*
**Ohio**  69:*13*
**okay**  10:*8*  14:*22*
15:*20*  17:*8*  28:*9*
64:*12*  65:*4*  66:*1*
84:*8*
**Oklahoma**  84:*19*
**omissions**  44:*17*
**once**  26:*6*
**one-foot**  35:*17*
**ones**  74:*10*

**on-point**  14:*6*
39:*21*  40:*14*
79:*13, 14, 16*
**opinion**  13:*19, 22*
21:*5*  81:*20*  82:*5*
**opinions**  13:*17*
**opioid**  11:*4*  14:*1*
19:*11*  26:*22*  28:*2*
29:*4*  32:*9*  37:*6*
39:*11*  40:*12*
41:*13*  45:*12*
51:*15*  53:*1*  62:*13*
64:*5*  77:*12*  81:*7*
**opioids**  11:*5, 6, 8*
19:*12*  31:*8, 20*
32:*1, 6*  44:*20*
52:*17*  54:*15*
**opportunity**  76:*22*
**opposed**  17:*5*
**opposition**  74:*3*
76:*22*
**OPTIUM**  4:*4*  8:*7,
10, 13*  40:*19*
**order**  10:*3, 6, 20*
13:*7*  17:*11, 11*
20:*9, 21*  22:*9*
23:*13*  24:*17, 20*
25:*4*  37:*21*  38:*7*
42:*17*  50:*2, 2*
57:*19*  60:*13, 14*
71:*3*  75:*7, 9, 11*
76:*18, 20*  77:*13*
**orders**  32:*5, 20*
33:*22*
**organizational**
75:*2*
**organized**  71:*21*
**orient**  51:*9*
**original**  25:*2, 7*
51:*3*
**ought**  59:*7, 9*
82:*9*  84:*9*
**outset**  72:*16*
**outside**  29:*3*  83:*7*

overuse 32:9

< P >
P.O 5:14
page 2:22 3:22
4:22 5:22
Pagliara 67:12
paid 44:7, 11 62:8
pain 51:15
panel 13:7 71:6
76:15 80:16
papers 68:4 69:9
83:12
paragraph 30:20
31:11, 18 32:3, 15,
17 33:7, 18, 20
34:4, 5, 6, 10, 10,
17 43:8 44:22
45:1, 11 52:21
53:9
paragraphs 18:9,
10 31:1, 4, 9
32:22 33:1, 14, 15
43:18 44:2, 5
51:11
parens 42:7, 10
48:2 61:2 69:3
PARK 6:4 9:2, 3
part 11:3 14:22
16:18 17:12 23:9
29:3 34:2 48:4
52:14 57:9 75:20
77:16
particular 13:5
16:13 18:8 23:19,
19 29:6 30:19
37:7 48:13 49:17,
22 55:2 61:15
64:10, 21 66:6
particularly 36:20
particulars 52:22
parties 1:22 9:11
17:8 37:18, 20
38:20 51:2 58:20
75:12

party 16:18
17:12 38:3 42:20,
22 57:16, 18, 18,
21, 22 58:1, 3
78:17 87:9
pass 51:21
passed 52:13
patients 27:7
patriae 42:7, 10
48:2 61:2 69:4
patriot 69:4
Pawnee 84:20
payments 45:13
penalties 53:18
pending 9:7, 18
41:11 50:15 57:7
66:19 67:8, 9, 15
69:6, 14 73:16
74:15 84:11
PennStuart 5:12
Pennsylvania 2:15
5:8
perfect 68:9
period 62:9
permissive 58:1, 20
person 56:12
57:11, 12, 14
persons 15:14
47:2
perspective 10:3
petitioned 13:3
PHARMA 1:8
5:4 9:5, 6 54:8
84:20
pharmaceutical
11:4, 6
pharmaceuticals
31:7 52:2, 8, 16
pharmacies 31:21
52:3 54:9, 14
Pharmacy 14:8
15:1 40:20 52:8
54:10 60:21
Philadelphia 5:8
pick 18:6

piece 12:15, 17, 19
20:11 23:11
64:14
pieces 65:3
Pigs 12:12 20:6, 7
place 27:8, 13
placed 85:4
Plaintiff 1:6 2:3
3:4 43:7 44:10,
21 45:4, 12, 17
54:8 55:19 62:6,
8, 12 70:21 76:7,
21 83:19 84:22
plaintiffs 13:2
19:10 40:1 41:18,
22 43:5 44:18
45:1, 14 48:16
50:3, 9 54:15
71:13, 19 72:12
74:1, 6 81:5
84:11
plaintiff's 10:3
21:2 48:9 55:4
70:3
plan 71:17
played 32:1
players 55:21
pleading 29:18, 18,
21
please 7:6 9:4
10:10 65:19
67:18
pleasure 9:20
Pocahontas 59:20
point 23:16, 17
39:22 40:4, 14
45:22 55:15
59:11 60:16 61:8,
19, 20 63:7, 8, 12,
17 64:1 69:20
73:17 74:9 80:10
83:15
pointed 65:2
points 39:2 60:18,

20
political 42:10
Polster 41:11
69:7, 14 70:1
72:18 74:21 81:2,
7 84:10, 13 85:2, 7
position 35:12
55:6 57:10
possess 16:19
possibilities 54:18
possibility 29:13,
15 30:6 35:15
possible 13:12
59:6 72:20
postponed 71:12
practice 47:5
58:22
precedent 79:13,
14, 17 82:4
precluded 45:20
predicting 54:20
preference 85:7
prejudice 38:1
70:4 79:5
preliminary 85:10
premise 82:6
prepared 82:21
prescription 27:2,
7, 8, 14
prescriptions 32:8
presence 25:12
29:9
present 1:21
22:22 38:9 43:10
presented 39:1
preserve 26:9
preside 71:7
presided 72:18
presumption 41:5,
8
pretty 83:2
prevail 43:19 50:6
prevailed 44:12
prevent 27:14

32:6, *19*
**price** 27:*9*
**primary** 77:*22*
80:*2*
**pro** 9:*7*
**probably** 16:*22*
**Procedure** 15:*10,*
*12, 18, 21* 16:*4*
18:*17, 19* 41:*17,*
*18* 61:*6* 71:*13*
75:*11, 17*
**proceedings** 12:*22*
71:*8* 75:*15* 81:*22*
86:*7* 87:*7, 10*
**product** 54:*1*
**products** 44:*11*
62:*8*
**profits** 45:*17*
**programs** 45:*4*
**prohibition** 58:*6,*
*11*
**promote** 37:*19*
**promptly** 83:*3*
**prongs** 12:*14*
**proper** 36:*14*
80:*18*
**properly** 59:*8*
**property** 47:*2*
**proprietary** 78:*19*
**prosecute** 70:*12*
**prospect** 76:*4*
80:*4*
**protected** 54:*11, 12*
**Protection** 11:*16*
62:*5, 6*
**prototypical** 83:*9*
**provide** 13:*17*
16:*4*
**provided** 20:*4*
**providers** 52:*3, 9*
**provides** 13:*19*
21:*17*
**provision** 46:*14*
**proximate** 62:*10*

**public** 11:*12*
21:*15, 17* 23:*4, 6*
32:*11* 43:*11* 87:*3,*
*17*
**purchase** 44:*19*
**purchased** 31:*20*
**purchases** 45:*12*
**PURDUE** 1:*8* 5:*4*
9:*5, 5, 6* 50:*22*
54:*7* 84:*20*
**purposes** 14:*6*
15:*7* 19:*4* 20:*14*
22:*5* 25:*12*
**pursuant** 77:*2*
**put** 22:*19* 40:*6*
42:*14* 75:*1, 7*
**putting** 53:*7*

**< Q >**
**qualify** 20:*21*
21:*12* 22:*9*
**question** 12:*8, 10*
14:*12* 15:*15*
19:*20, 22* 20:*1, 3,*
*22* 21:*3, 14* 23:*15*
36:*8, 17* 41:*2*
46:*22* 48:*7, 7, 11,*
*19* 49:*21* 53:*7, 21*
56:*13* 57:*20* 63:*7,*
*13* 64:*22* 69:*17*
78:*1, 8*
**questions** 19:*18*
66:*12* 84:*2, 4*
**quick** 23:*16*
60:*15* 82:*13, 15, 16*
**quickly** 28:*10, 17*
60:*9, 12* 84:*14*
86:*2*
**quote** 32:*13*
84:*22* 85:*2, 8*
**quoted** 31:*16*
**quote-unquote**
17:*8, 22*
**quoting** 21:*1*

**< R >**
**raised** 14:*20*
19:*19*
**raises** 64:*2*
**raising** 55:*16*
**range** 11:*11*
**reach** 37:*5*
**read** 32:*22* 46:*20*
62:*17*
**reading** 35:*5, 6*
39:*3*
**reads** 72:*7*
**real** 17:*8* 23:*16*
54:*4, 13, 14* 55:*19*
84:*14*
**realize** 80:*3*
**really** 29:*5, 20, 21*
45:*10* 47:*9* 53:*10*
55:*3*
**reason** 16:*15*
28:*2* 71:*11* 76:*3*
85:*17*
**reasonable** 54:*20*
**reasonably** 45:*2*
54:*19*
**reasons** 17:*1* 19:*6*
**REBECCA** 87:*2,*
*16*
**rebuttal** 43:*8, 12*
70:*14, 18*
**recognize** 19:*1*
66:*2*
**recognized** 12:*10*
20:*8* 21:*2*
**recognizes** 68:*16*
**record** 7:*7* 75:*1*
**recover** 23:*3*
**recovered** 44:*12*
**recovering** 45:*20*
**recovery** 29:*13, 15*
30:*7, 8* 35:*15*
48:*2*
**reference** 18:*7*

**referenced** 75:*10*
**references** 53:*4*
**referred** 31:*15*
75:*5*
**refers** 63:*19*
**reflexive** 76:*18*
**refused** 81:*21*
**regard** 72:*6* 75:*3*
**regarding** 52:*22*
**registered** 52:*18*
**regs** 27:*12*
**regulatory** 34:*8*
**reimbursement**
44:*6, 15* 62:*7*
**reject** 35:*18*
**rejected** 14:*3*
19:*8, 10, 11* 26:*13*
28:*2* 37:*7* 55:*9,*
*10* 61:*10* 65:*17*
79:*19* 84:*17*
**rel** 67:*4*
**related** 41:*5* 87:*8*
**relating** 43:*20*
**relatively** 10:*21*
**relevant** 13:*20*
**reliance** 21:*21*
45:*6*
**relied** 42:*3* 45:*2*
47:*11* 81:*20, 20*
**relief** 21:*2* 25:*17*
43:*5* 47:*7*
**rely** 14:*21* 30:*13*
**relying** 10:*18* 49:*3*
**remain** 67:*9*
**remand** 9:*19*
10:*4, 14, 17* 36:*15*
40:*2, 15* 42:*4*
50:*13* 66:*12, 13,*
*21, 22* 67:*10* 68:*8*
69:*7, 15* 73:*15*
75:*4, 10, 14, 18, 19*
78:*18* 79:*11*
80:*21* 81:*3, 10*
82:*1, 1, 3* 85:*3, 9*

remedy  42:*17, 18, 18*

remember  14:*9* 16:*21* 23:*10* 33:*9*

remind  70:*5*

removal  12:*6* 25:*4* 36:*21, 22* 41:*5, 9* 42:*5* 46:*9* 48:*5, 8, 20* 49:*18, 20* 50:*7* 56:*21* 57:*6* 72:*8* 78:*12, 17, 19* 81:*8, 9*

removed  13:*1, 13, 14* 24:*14, 19* 41:*4* 66:*20* 69:*13* 70:*11* 71:*20* 73:*11, 14* 74:*12* 76:*14* 84:*1, 3*

removing  27:*19* 40:*18, 21, 21*

render  77:*13*

repeating  62:*21*

report  32:*5, 20* 33:*22*

Reporter  87:*2*

represent  40:*19* 65:*20*

representation  47:*10*

representations  45:*3*

representative  16:*17, 18* 17:*12* 18:*3, 20* 19:*2* 42:*2* 46:*16* 47:*4, 15, 21*

represented  15:*13*

require  17:*17, 18* 20:*11* 22:*14* 23:*8* 48:*11*

required  33:*19, 21* 46:*4* 49:*16* 57:*16, 18* 64:*2*

requirements  32:*19* 46:*8*

requires  21:*7, 11* 22:*12* 42:*16* 50:*5* 80:*3*

requiring  23:*12*

resident  11:*22* 17:*14*

residents  17:*5* 18:*4, 8, 12* 42:*2, 21* 43:*1, 21, 22* 44:*8, 13, 18, 21* 45:*2, 7, 13, 14, 18, 19* 48:*4* 62:*2*

resides  78:*17*

resolution  20:*12* 21:*7, 9, 12* 22:*13, 15* 23:*9, 12, 21* 41:*15* 48:*12* 50:*5* 85:*9*

resolve  78:*10, 18* 79:*3*

resolved  21:*20* 62:*20* 69:*4* 72:*14* 84:*7, 9*

respect  13:*15* 19:*9* 20:*5* 25:*15* 26:*15* 37:*15* 47:*1* 64:*18*

respective  1:*22*

responding  62:*13*

responses  60:*7*

responsibility  38:*3*

rest  59:*10*

result  35:*2* 37:*17* 62:*10*

resulted  53:*17*

retail  52:*3, 8*

retained  78:*20*

review  83:*12*

Richmond  4:*21* 47:*18*

right  7:*11* 9:*9, 13* 10:*7* 21:*2* 30:*20* 32:*16* 34:*18* 35:*11* 39:*15* 40:*16* 50:*17, 20*

60:*9* 62:*20* 65:*18* 66:*17* 68:*2* 69:*6, 13* 70:*13* 74:*10* 83:*16* 86:*1, 5*

RIVIERE  8:*21, 22*

RIVIERE-BADEL L  6:*11*

Rockbridge  71:*8*

role  32:*1* 36:*10, 11* 53:*1*

ROSADO  6:*12* 8:*15, 16*

ROSS  3:*12* 7:*22*

ROXANNE  6:*12* 8:*16*

RRAJ  20:*7*

Rule  12:*17* 15:*9, 12, 18, 18, 21, 22* 16:*2, 3* 18:*16, 17, 19* 19:*4* 24:*9* 26:*2, 16* 35:*21* 36:*6, 8, 20* 37:*3, 5* 38:*18, 18* 41:*17* 43:*20* 57:*15, 17* 58:*7* 59:*15, 17* 61:*6, 7* 65:*7, 13* 68:*7* 69:*22* 83:*10*

Rules  15:*9* 41:*18* 77:*2*

ruling  45:*19* 66:*5* 68:*7* 85:*20*

rulings  69:*21* 84:*12*

run  28:*18*

rush  70:*11*

Russell  38:*10*

< S >

sale  49:*1*

Salisbury  54:*7*

San  6:*8*

Sanford  2:*14* 3:*6, 13* 7:*16, 19, 22* 8:*3*

sat  80:*16*

saying  76:*3*

says  19:*1* 30:*22* 31:*12, 18* 32:*17* 33:*9* 34:*10* 46:*21* 49:*5* 53:*11* 62:*6, 10* 63:*9* 75:*11* 83:*8*

scope  26:*2*

SCRIPTS  6:*3* 8:*16, 20* 9:*1, 3* 40:*20* 65:*21*

se  50:*4*

second  12:*7* 13:*19* 14:*14* 19:*12* 25:*19, 21* 51:*20, 22* 52:*13* 64:*1* 67:*18*

Secondly  61:*9*

seconds  64:*15, 16*

section  34:*2* 52:*20* 53:*2*

see  46:*3* 48:*15* 80:*1* 83:*13*

seek  43:*5, 10* 45:*16* 46:*13*

seeking  44:*6* 47:*7, 22* 48:*2* 78:*17*

seeks  62:*7*

sense  64:*4* 66:*10* 68:*9, 12* 69:*20*

sent  72:*11* 75:*21*

separate  37:*16* 49:*9* 57:*10*

serious  36:*16*

served  70:*8*

services  62:*15, 15*

session  77:*6*

set  13:*10* 16:*22* 24:*10* 30:*3* 46:*11* 52:*20* 70:*9*

sets  49:*6*

settled  47:*5*

settlement  34:*12*

sever  26:*4, 6* 36:*1* 38:*19* 59:*9, 22*

severable  38:*18*

severance 12:17 24:9 26:2 37:5, 22 39:14 51:6 56:22 57:9, 11, 15 58:7 59:18 65:9 69:18
severed 57:14, 19 65:17
severely 70:5
severing 36:19 65:8
Sharp 2:14 3:5, 6, 13 7:15, 15, 16, 20, 22
shelf 81:15
shift 38:3, 5
short 76:6 79:6 80:5 81:19
show 25:19 28:20 29:12, 12 30:5 34:16, 16 64:3
showing 27:20
shows 72:1
sic 67:4
side 48:9 60:8
significant 20:13 38:1 78:13
similar 13:5 15:11, 17, 18, 22 16:1 17:11 19:4 27:1 50:14 54:6 57:7 61:7 69:19 85:12
Similarly 44:16 47:7 84:10
simply 23:13 30:11 39:9 61:21 62:2, 21 74:11
single 11:15 20:11, 18 23:10 40:13 62:16
sir 9:12 64:18
sit 25:1 59:12 70:18

sitting 24:16 81:15
situated 47:7 84:10
situation 56:1, 14, 21 59:1 79:8 82:11
six 71:13
Sixteenth 4:8
slightly 36:2
slimmest 72:7, 13
small 12:9 20:3 79:7
snapshots 40:5
social 62:15
sold 31:21 54:15 55:3
solid 60:2
somewhat 13:19
sorry 64:13 82:1
sort 24:10 37:2 40:8
sorts 40:5
sought 43:7 72:7, 22
South 4:7, 20 6:15 26:17, 19 37:12 55:12, 17 64:19, 21
Southeast 2:15
Southern 69:12
sovereign 42:7 48:1
special 12:9 20:2
specific 20:17 28:15, 18 29:5 31:2, 5 33:2, 15 34:21 53:3, 9, 22 54:5 55:22 56:9
specifically 14:21 15:2 19:1 20:4 33:10 34:7, 8 35:1, 9 36:21 37:11 39:20 40:11, 13 60:22

64:20 65:7 75:3, 10 76:21
SPIVEY 2:4 7:8, 8 70:20, 20 73:12 74:14 81:17 82:10 83:4 86:3
Square 1:20
squarely 84:17
Stadium 78:15
stage 16:22 24:10 27:6
stand 75:19, 22
standard 29:21 41:15 48:10 54:17, 18
standards 29:19 46:4 49:7, 7
stands 38:1 79:2
start 12:18 26:15 60:17 70:21
started 39:2 46:19 47:13 60:13
starting 41:1
state 11:11 13:1 15:5, 11, 17, 21 16:1, 15 17:16, 17, 18 18:16, 19 20:10, 11, 15 21:16 23:9 24:3 29:16 42:5, 6, 11, 12, 19 43:5, 20, 21 44:16 45:1, 10 48:1 56:13 61:6 63:16, 17, 18 72:2, 4, 13 73:3, 3, 13, 18 74:7, 11, 11 78:20 81:12, 12, 13, 18 82:2, 3
stated 41:22 54:18 77:10
statement 55:11
statements 28:12
STATES 1:1, 18

27:3 52:4, 10
status 70:9
statute 15:11, 11, 12, 17, 21 16:1 18:16, 19 21:16 61:6
statutory 11:11 23:4, 6 73:22
stay 9:19 10:5 50:12, 18 65:22 66:4, 13 68:12 80:13 81:22 85:14
stays 67:5, 14
stick 65:15
straightforward 85:12
strain 47:12
Street 2:7 3:7 4:7, 14, 20 5:7, 13 6:6 78:11
strictly 78:12
subcategory 30:17
subdivision 42:11
subhead 30:21 31:4 32:16 33:8
subject 18:13 34:18, 22
subject-matter 36:13, 14, 18 37:3
subjects 51:7 73:15
submit 49:22 55:11 57:20 59:7 79:4
subpart 33:17
subparts 34:6
subsequent 57:6 71:15
Substances 22:1, 3, 7 34:1 48:18, 21 49:1, 2, 5, 8, 10, 11, 16 50:5 63:19
substantial 20:13

64:4, 7
**substantiate** 38:8
**successful** 44:20
  50:3
**succinctly** 10:21
**sue** 42:12
**sued** 51:18, 20, 22
  54:8
**suffer** 16:19
  17:19 38:1
**sufficient** 25:16
  65:1
**sufficiently** 37:15
**suggest** 30:1
  80:18 85:11
**suggestion** 59:13
**suggests** 58:14
**suing** 42:22
**suit** 16:17 73:19
**Suite** 2:8, 16 3:8
  4:20 6:16
**supplemental** 51:3,
4, 5
**supply** 27:2, 17
**support** 25:17
  55:6
**supporting** 21:6,
11 22:12 24:2, 4
**supposed** 27:10
  77:20 78:4, 22
**supposedly** 74:11
**Supreme** 12:10
  13:3, 6 18:21, 22
  41:6 46:21 47:12
  48:10 49:19
  58:18, 19 59:21
  64:9 71:1, 2, 3, 5,
22
**sure** 41:16 60:14
  76:2, 11 82:13, 15
**suspicious** 32:5,
20 33:22
**swooped** 24:19

**system** 27:3, 9, 11
  33:21 64:5, 8
  72:2, 4, 6 78:3
**systems** 20:14

< T >
**tacked** 29:7
**Tag-Along** 76:15
**take** 26:8 40:3
  65:4 83:1 86:1
**taken** 40:5 53:15
**takes** 27:8 71:13
**talk** 12:2 18:11
  22:17 30:13 34:7
  37:11 48:6 64:6
**talked** 26:20 61:3
  80:13, 15
**talking** 65:6, 7
  81:14
**talks** 33:18, 20
**tangential** 24:13
**tantalizing** 76:4
**target** 34:8, 12
**taxation** 47:2
**Tazewell** 71:10
**tell** 28:7, 8 30:14
  39:10 62:22
  75:16 83:17
**telling** 82:18
**Temple** 58:18
**ten** 30:4 70:7
**ten-foot** 35:17
**Tennessee** 3:9
**terms** 9:20 83:19
**test** 20:17, 18 78:7
**Texas** 55:14 56:15
**Thank** 60:3, 4
  70:19 85:22 86:3,
4
**theories** 24:3, 8
  40:5
**theory** 21:6, 11
  22:10, 12, 14
  23:20 24:2 39:16
**thereof** 87:11

**thing** 25:21 62:15
  67:13 73:20
  81:18 84:17
  85:16
**things** 16:14 23:8
  26:20 28:12
  38:21 40:8 42:21
  60:15 76:12
  78:22 79:22
**think** 10:3, 6
  14:5 16:12 26:11
  28:20 37:1 54:6
  55:7 57:3 60:1, 6,
7 68:3 73:17
  77:14 80:8 82:20
  83:13, 20 85:18
**third** 51:22
**three** 10:15 12:5
  13:8 52:10 70:8,
10
**three-judge** 13:7
  71:6
**threshold** 15:15
  78:8
**time** 13:13, 14
  19:8 25:4 33:9
  45:11, 12 50:19
  59:14, 16 60:3
  63:2 65:12 75:14
  76:10 77:18
**timely** 77:1
**times** 70:9, 10
  71:4
**timing** 76:12
**tiny** 20:9
**tired** 63:1
**today** 15:7 25:2
  65:13 68:12, 21
  72:9 75:19, 22
  79:21 83:11 84:6
**told** 41:6 62:21
  77:3, 5
**tort** 59:2
**tortfeasor** 58:16

59:2, 6
**tortfeasors** 58:19
**totally** 65:13
**touch** 45:10 60:15
**transaction** 58:10
**transcript** 75:1
  87:6
**transfer** 57:6
  74:3 76:20 77:13
  85:1, 19, 20
**transferee** 80:14,
18, 19
**transferor** 80:14,
20
**transferred** 69:11,
22 76:8 77:15
  85:14, 15
**transferring** 68:15
  76:19
**transform** 63:20
**tremendous** 68:21
**trespass** 21:19
**trial** 22:19
**tribal** 81:5
**tribes** 81:6
**tried** 18:6 29:2
  34:20 40:6
**triggered** 76:18
**true** 22:3 43:16
  59:17 87:6
**try** 10:21 72:20
**turn** 41:1
**TURNER** 4:18
  8:6 9:16
**two** 13:16 14:10
  24:7 25:8 51:7
  54:9 55:13 60:18
  63:4 67:16 76:13
  77:1, 1 81:5, 11
**types** 45:20 74:17
**typical** 16:5
  17:20 46:4
**typicality** 46:6
**typically** 78:11

**< U >**

**U.S** 59:*20*

**undecided** 75:*22*

**underlined** 21:*5*

**underneath** 18:*16* 30:*22* 31:*3*

**understand** 33:*11, 13* 35:*11* 39:*15* 56:*19* 62:*19* 76:*12* 81:*16* 82:*18*

**underway** 72:*4*

**undisputed** 24:*14*

**unequivocally** 26:*14*

**unfair** 16:*8*

**uniform** 48:*22*

**uniformity** 69:*21* 84:*12* 85:*19*

**unique** 69:*2*

**UNITED** 1:*1, 18* 27:*3*

**UNITEDHEALTH** 4:*3* 7:*4* 8:*7, 11, 14* 40:*19*

**unjust** 45:*9*

**unnecessary** 32:*7*

**unresolved** 75:*22*

**upside** 79:*3*

**urge** 79:*3*

**use** 36:*8* 68:*19*

**users** 11:*8*

**usually** 29:*17*

**utterly** 79:*19* 80:*7*

**< V >**

**Va** 46:*20* 47:*16, 18*

**vacate** 77:*3, 5, 10*

**vague** 30:*11*

**valid** 29:*20*

**vast** 66:*20*

**versus** 7:*4* 42:*3* 46:*20* 47:*18* 54:*7* 67:*4, 12* 84:*20*

**VI** 48:*16, 16* 50:*4* 63:*8, 11, 15, 17, 18*

**vice** 9:*8*

**view** 80:*17*

**violate** 22:*7, 21* 49:*5*

**violated** 22:*6* 32:*19* 49:*6, 12*

**violates** 49:*11*

**violation** 49:*4, 15*

**VIRGINIA** 1:*2, 11, 19, 20* 2:*9* 4:*21* 5:*15* 11:*11, 14, 16, 17, 22* 12:*22* 13:*3, 6* 14:*8* 15:*1, 5, 19* 16:*16* 17:*15, 17* 18:*18, 21, 22* 19:*1, 3* 22:*17* 23:*2, 5* 25:*11* 28:*13* 29:*10, 16, 21* 31:*6, 21* 32:*2, 21* 41:*16* 42:*3* 43:*21, 21* 46:*15, 21* 47:*11, 12, 20* 48:*17* 49:*3, 4, 6, 9, 12, 14* 51:*16* 52:*4, 15* 55:*14* 56:*8, 10, 14* 57:*3* 60:*21* 61:*8* 62:*4, 5* 63:*9, 18* 66:*3* 67:*2, 3* 68:*1* 71:*1, 2, 3, 5, 13, 14, 20, 22* 72:*2, 6* 73:*18* 74:*8* 87:*1, 4, 18*

**< W >**

**WADE** 5:*11* 9:*4* 50:*21*

**walk** 41:*20*

**want** 12:*21* 28:*8, 10, 17, 18* 30:*5, 13*

44:*9, 9, 13* 45:*10* 50:*8* 51:*21* 60:*12, 14, 19, 20* 61:*20* 63:*4* 65:*15* 68:*19* 70:*5* 74:*7* 80:*4, 8* 83:*17*

**wanted** 51:*7* 74:*1, 1* 79:*11*

**wants** 9:*14* 10:*1* 83:*19*

**WARD** 5:*5* 9:*7*

**Washington** 2:*17* 4:*15*

**way** 29:*11* 33:*14* 34:*10* 46:*18* 52:*19* 64:*9* 68:*19* 71:*21* 72:*10* 77:*19* 78:*3, 22* 79:*1, 7*

**ways** 16:*12*

**week** 81:*1*

**weeks** 77:*1*

**weighs** 84:*12*

**welcome** 80:*19* 83:*12*

**well** 9:*19* 20:*5* 21:*22* 23:*18, 20, 22* 28:*9* 29:*4* 34:*21* 43:*2* 46:*17* 48:*6* 52:*11* 61:*14* 62:*18* 63:*8* 65:*17* 66:*13* 69:*16, 22* 74:*10, 13* 82:*8*

**went** 16:*10*

**we're** 25:*2* 51:*2* 52:*12* 53:*7* 55:*16* 60:*1* 67:*6, 6* 76:*3, 8, 9* 77:*17* 81:*14*

**West** 2:*7* 14:*8* 15:*1, 5, 19* 16:*16* 17:*14, 16* 42:*3* 55:*14* 56:*8, 10, 13* 60:*21* 61:*7*

**Western** 57:*2, 2* 74:*16*

**we've** 21:*1, 15, 17, 18, 19* 23:*20* 28:*19* 30:*7* 73:*12* 75:*1* 82:*20* 83:*5*

**wholesale** 31:*7* 52:*16*

**widely** 36:*3*

**WILLIAM** 4:*12*

**Williams** 4:*19* 8:*6*

**window** 20:*22* 22:*9*

**windup** 53:*12*

**wit** 87:*1*

**word** 21:*4* 22:*11*

**words** 17:*13* 18:*8* 20:*18* 36:*10* 38:*5* 66:*4*

**work** 11:*7* 77:*20* 78:*4, 22* 82:*13*

**working** 13:*10* 25:*2*

**wrap** 35:*14* 63:*4*

**wrong** 35:*10*

**wrongdoing** 58:*16*

**wrongful** 53:*16*

**wrote** 81:*19*

**< Y >**

**yanked** 72:*3* 77:*17*

**yeah** 21:*13* 67:*21*

**year** 71:*16* 79:*18, 20*

**years** 54:*7*

**yesterday** 74:*17*

**York** 3:*16, 16*